## JOSEPH HUSS, Appellant, v. HEYDT BAKERY COMPANY.

### In Banc, February 27, 1908.

1. **NEGLIGENCE: Instruction: No Evidence: Unguarded Machine.** Where there was evidence that a machine, similar to the dough-mixing machine by which plaintiff was injured while working thereat, when guarded had occasioned an accident to an employee while working thereat, that the machine and its surroundings were described to the jury and a photograph thereof was in evidence, it cannot be said there was no evidence on which to base an instruction for defendant to the effect that, if the gearing upon the machine could not be safely guarded without materially interfering with the efficient working of the machine, a failure to so guard said gearing constituted no negligence.

   *Held*, by **Woodson, J.,** in a dissenting opinion, that there was no evidence on which to base said instruction. It was not only possible to guard the gearing of the machine, but the physical facts show beyond question that any ordinary mechanic, at small cost, could readily have constructed a safe guard which would not have interfered in the remotest degree with the operation of the machine.

2. ————: ————: **Converse of Plaintiff's.** Besides, said instruction simply placed before the jury the converse of the same proposition presented by one asked by and given for plaintiff, and therefore there was no error in giving it.

3. ————: ————: **Guarding Machinery: No Posting of Notice: Statute.** Where plaintiff charges that the gearing of a dough-mixing machine was dangerous and was not safely guarded, as the statute (Sec. 6433, R. S. 1899) requires, he cannot recover on the theory that defendant had failed to post a notice that the gearing was dangerous but could not be properly guarded. Hence, an instruction for defendant to the effect that, if the machine could not be safely guarded without materially interfering with the efficient working of the machine, then a failure to so guard it was not negligence, was not error on the theory that it was defendant's duty, under the statute, if the machine could not be guarded, to post notice to that effect. Plaintiff's cause of action is based on the theory that the gearing could have been safely guarded and was not; to permit him to recover for failure to post the notice, would be to authorize a recovery for negligence not pleaded.

*Held*, by Woodson, J., dissenting, that the instruction was erroneous, because it is no defense under the statute to show that it was impossible to safely guard the gearing of the machine, without it is further shown that the master properly posted the notice of its danger required by statute, and in this case there is no pretense that such notice was posted. It cannot be assumed, as a matter of law, that the plaintiff would have been injured had the notice been posted.

4. ———: ———: Guards to Machine: Slippery Floor: Plaintiff's Neglect of Own Duty. Where plaintiff charges his injuries to defendant's negligence in failing to guard the gearing of a dough-mixing machine at which he was at work, and says that defendant negligently permitted oils used in the bread-making to escape into a passage-way between the oil barrels and the dough-mixing machine, whereby the floor became greasy and slippery, and that while in the exercise of ordinary care plaintiff slipped and fell by reason of the slippery condition of the floor, whereby his hand was thrown into the gearing and pulled into the machine, it is not error to instruct the jury that if it was plaintiff's duty to keep the floor clean and had he fulfilled that duty he would not have slipped, and did not, he cannot recover, there being substantial evidence to show that it was plaintiff's duty to keep the passage-way clean and that he did not do so. The instruction only submitted to the jury the plaintiff's contributory negligence.

*Held*, by Woodson, J., dissenting, that the instruction was erroneous: First, because it completely ignores the statute upon which the case is bottomed and which required the defendant to safely guard the gearing, and is based upon the common law theory which only requires the master to furnish the servant with a reasonably safe place in which to work, whereas the statute imposes upon the master a much higher duty. Second, the failure of plaintiff to keep clean the passage-way was at most only an inducing or remote cause of his injury, while defendant's failure to safely guard the gearing was the direct and proximate cause of the injury, and if it had performed its statutory duty the injury would not have occurred.

5. ———: Statutory Duty: Contributory Negligence. Notwithstanding the statute imposes on defendant the duty of safely guarding the gearing to its machines, a defendant that has failed to perform that duty may avail itself of the plea of contributory negligence.

6. ———: Assumption of Risks: No Instruction. Notwithstanding the fact that the trial court refused to strike out defendant's plea of assumption of risks, yet if the instructions submit no such issue, that plea will not be considered on appeal.

7. **INSTRUCTIONS.** The giving of two instructions, worded somewhat differently, covering the same point or proposition, is not reversible error.

8. **NEGLIGENCE: Contributory: Known to be Dangerous: Instruction.** If an employee knows that a place furnished by the master is so obviously and imminently dangerous that an ordinarily prudent person would not remain at work thereat, it is contributory negligence for him to work there, and it is not error to so instruct the jury.

*Held,* by Woodson, J., dissenting, that this instruction should not have been given because there was no evidence upon which to base it; there was no evidence that the danger was so "obvious and imminent" that a person of ordinary prudence would not have continued in his employment with defendant on that account. On the contrary, the evidence shows that, in the absence of the statute, the defendant would have been guilty of no negligence whatever in furnishing the plaintiff with the identical machine which caused his injury.

9. ————: **Corporation: Instruction: "According to Instructions and Evidence."** Where plaintiff is an individual and the defendant a corporation it is not reversible error to instruct the jury that "in a suit of this kind it is the duty of the jury to base their verdict solely upon the evidence in the case and the instructions given by the court."

10. **WITNESSES: Credibility: Members of Labor Union.** It is not error to permit defendant on cross-examination of plaintiff's witnesses to show that they are members of the same bakers' union to which he belongs.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy,* Judge.

AFFIRMED.

*Selden P. Spencer* and *Adolph R. Grund* for appellant.

(1) The court erred in giving instruction 1 for defendant, for the reason that the instruction has absolutely no evidence to warrant it, and is against the uncontradicted physical facts. State v. Turlington, 102 Mo. 663; State v. Anderson, 89 Mo. 332; State v. Bryant, 102 Mo. 32. (2) The court erred in giving

instruction 3 for defendant, for the reasons: (a) it is not the law; (b) it completely ignores section 6433, Revised Statutes 1899, upon which the case is bottomed; (c) it assumes the failure of plaintiff to fulfill his duty, a question which should have been left to the jury; (d) because the instruction is without evidence to support it. (3) The court erred in giving instruction 6 for the defendant because: (a) it is not the law. Stoddard v. Railroad, 65 Mo. 521; Thorpe v. Railroad, 89 Mo. 662. (b) Because there is no evidence to sustain it.

*Wise & McNulty* and *Seddon & Holland* for respondent.

(1) The court did not err in giving instruction 1 for defendant. There is ample evidence to sustain the giving of this instruction. (2) The court did not err in giving instruction 1 given at the instance of defendant. Bair v. Heibel, 103 Mo. 621; Epperson v. Postal Tel. Co., 155 Mo. 346. (3) The court did not err in giving instruction 3 at the instance of defendant. There is ample evidence upon which to base this instruction and it correctly states the law. Schaub v. Railroad, 106 Mo. 74. (4) The court did not err in giving instruction 6 at the instance of defendant. Said instruction correctly states the law with reference to assumption of risk. Curtis v. McNair, 173 Mo. 270; Blundell v. Miller Elevator Co., 189 Mo. 552.

## IN BANC.

PER CURIAM:—The following opinion by GRAVES, J., in Division No. One, is adopted as the opinion of this court. In this *Gantt, C. J., Burgess, Valliant* and *Lamm, JJ.,* concur; *Fox, J.,* concurs in the result; *Woodson, J.,* dissents in separate opinion.

## IN DIVISION ONE.

GRAVES, J.—Action in the circuit court of the city of St. Louis for personal injuries. Defendant is a domestic corporation engaged in the bakery business wherein it has a certain machine called a dough-mixer. Plaintiff was the person who operated said machine. The pertinent portions of the petition are:

"Plaintiff further states that it was the duty of said defendant company to safely and securely guard the belting, shafting, gearing and drums of the establishment, when possible, and when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties. And that said defendant company failed to safely and securely guard the belting, shafting, gearing and drums of its establishment, and that the said failure was in this, to-wit: That the said gearing and cog-wheels of the said dough-mixing machine was at and prior to said 9th day of November, 1903, left wholly unguarded, and that said gearing, belting, shafting and drums were dangerous to plaintiff and persons employed therein or thereabout, while engaged in their ordinary duties. And that said gearing, belting, shafting and drums could easily have been guarded so as to prevent injury to plaintiff and persons while in the exercise of their ordinary duties.

"Plaintiff further states that defendant negligently permitted the floor of said establishment, particularly in the neighborhood of said dough-mixing machine, to become dangerous and unsafe for any person to walk over, and that defendant allowed a barrel or barrels of baking-oil to stand within a few feet from said machine, from which quantities of baking-oil did escape and make the floor in the neighborhood of plaintiff's said machine, on said 9th day of November, 1903,

greasy and slippery so that the said floor could not be walked over without danger of falling.

"Plaintiff further states that on or about the said 9th day of November, 1903, while plaintiff was in the active discharge of the ordinary duties of his employment and while plaintiff was in the exercise of ordinary care and prudence on his part, plaintiff slipped and fell by reason of the slippery and greasy condition of said floor, whereby plaintiff's left hand was thrown into the said cog-wheels and gearing of said dough-mixing machine, whereby he lost his first three fingers and part of the palm of his said hand and his little finger was permanently stiffened and crippled—and his thumb was broken and bent and permanently stiffened and crippled and his entire hand thus rendered forever useless.

"That the said injuries received by plaintiff were caused solely by the failure of the defendant to guard the said gearing and cog-wheels of said dough-mixing machine, as it was the defendant's duty to do, and by reason of the defendant failing to keep the floor on its establishment in the neighborhood of said dough-mixing machine in a reasonably safe condition, as it was defendant's duty to do."

Damages in the sum of $20,000 were claimed. Defendant's answer consisted of a general denial, a plea of assumption of risk, and a plea of contributory negligence.

To this answer plaintiff moved to require defendant to make its plea of contributory negligence more definite, and demurred to the defense of assumption of risk. Both motion and demurrer were overruled, plaintiff saving his execeptions and preserving them in a term bill of exceptions.

Later a reply in the nature of a general denial was filed. Such are the issues.

210 Sup—4

Upon trial a verdict, signed by eleven of the twelve jurors, was returned in favor of defendant, and a judgment entered in accordance therewith. After the adverse ruling of the trial court upon a timely motion for new trial, the plaintiff duly perfected his appeal to this court. The alleged errors charged against the trial court consist of the giving of certain instructions in behalf of defendant, as well as the admission of certain evidence in its behalf, all of which will be noticed in the course of the opinion.

I. The first complaint lodged in the brief filed by plaintiff is the giving of instruction numbered 1 for defendant. This instruction reads: "The court instructs the jury that if you believe from the evidence that the gearing upon the machine in question could not be safely and securely guarded without materially interfering with the efficient working of the machine in question, then and in that case the failure to so guard said gearing constituted no negligence on the part of defendant."

The objection urged to this instruction is two-fold: First, that there is no evidence upon which to base it, and, secondly, plaintiff says: "The said instruction number 1 for defendant is further objectional in that it does not state the law, for if the machine could not be guarded, it was the duty of defendant to post a notice to that effect. Of this duty no mention is made in the instruction."

There is evidence in the record to the effect that a similar machine when guarded had occasioned an accident to an employee working thereat. The machine and its surroundings were described to the jury and a photograph of the machine and its surroundings was in evidence. With this in the record, it cannot be said that there was no evidence upon which to predicate the instruction.

But going a step further, the plaintiff in his in-

struction numbered 1 required the jury to find that said machinery could be protected or covered. The language used by him in this instruction is: "And if you further believe that such dough-mixing machine and the belting, gearing, drums and cog-wheels thereof were at the time so situated as to admit of guards being placed upon such belting, drums, gearing and cog-wheels, without interfering with their free operation or with necessary access to them or with necessary passageway by or around them," etc.

Now, the instruction numbered 1 for defendant simply placed before the jury the converse of the proposition presented by plaintiff's instruction. Under such circumstances there was no error in giving the instruction for the defendant.

Nor is the instruction subject to the second criticism made by plaintiff. Plaintiff's cause of action is not based upon the ground that this machinery could not be protected, and therefore defendant was negligent in not posting a notice as required by Revised Statutes 1899, section 6433, but is based upon the negligent act of the defendant in failing to guard a machine which the plaintiff alleged could be guarded. A failure to post a statutory notice is not the negligence relied upon by the plaintiff. A party cannot plead one act of negligence as the basis of his action, and have a recovery upon another and different act of negligence. The section of statute above mentioned is as follows:

"The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

Under this statute and the two separate clauses

thereof, two acts of negligence are covered: First, where there is machinery that can be guarded, then a failure to guard it is negligence. Second, where the machinery is dangerous and cannot be guarded, then a notice of its dangerous character must be posted and a failure to perform this duty is negligence. In this case the plaintiff did not see fit to say that the machinery was dangerous and could not be guarded, and therefore a notice was required, but grounded his action upon a failure to properly guard machinery which was dangerous, but which could be guarded. On this theory the case proceeded below, and upon this theory it must proceed here. A case cannot be tried upon one theory below, and tried upon another and different theory here. The instruction was proper upon the theory of the case adopted by the plaintiff.

II. The next contention is that there was error in giving instruction numbered 3 for defendant, which instruction reads: "The court instructs the jury that it was the duty of the plaintiff while working in the vicinity of the machine in question to exercise ordinary care for his own safety, that is, such care as a person of ordinary prudence would exercise, under the same or similar circumstances. And the court instructs the jury that if you believe from the evidence that one of the duties of the plaintiff as an employee of defendant was to keep clean the floor in the vicinity of the machine in question, and had the plaintiff fulfilled the said duty on the occasion in question he would not have slipped and would not have caught his hand in the gearing in question, then and in that case your verdict must be for the defendant."

This instruction properly declares the law. To understand its application a further statement of the facts would not be inapropos. Between this dough-mixing machine and the wall of the building or room was a space of six to eight feet. A part of this space was

used as a pass-way, and the part next to the wall was occupied by barrels in which were contained oils and other materials to be used in the process of mixing bread. These oils and other materials, including the flour, would escape and accumulate on the floor of the passage-way, thus rendering it slippery and dangerous. The evidence fairly shows, by a preponderance thereof, that one of the duties of the plaintiff was to keep this passage-way clean, and that he had failed so to do. With these facts in the record, it cannot be said that there was error in this instruction. It covered, and to our mind properly covered, a very vital question in the case. Here we have a record full of evidence that the plaintiff had neglected one of his duties in permitting the passage-way to become slippery. The slippery condition occasioned his fall, and as a result of the fall, his injury. The case is not on all-fours with Musick v. Dold Packing Company, 58 Mo. App. 322, relied upon by the plaintiff. In the Musick case the fall of plaintiff was occasioned by a slippery floor, and by the fall the plaintiff was thrown into an uncovered vat of hot water and burned. There was no evidence in that record to the effect that the slippery condition was the result of a neglect or failure upon the part of Musick, and therein lies the distinction between that case and the case at bar. In other words, Musick had been guilty of no negligence which contributed to his own injury, as a proximate cause thereof, or as one of the proximate causes thereof. Here the jury could readily find that the fall upon the slippery floor, at least one of the proximate causes of the injury, was occasioned by the neglect of the plaintiff, and in that way his own neglect contributed to the injury received and was one of the producing causes thereof. There may be a combination of causes producing an injury. In this case, but for the slippery floor (a condition superinduced by the negligence of

the plaintiff) there would have been no fall and consequently no injury. On the other hand, there might have been the fall and no consequent injury had the machinery been guarded. The injury was not therefore entirely dependent upon one cause, but upon a result of the two combined, one of which was the product of plaintiff's neglect of duty and want of due care for his own safety. The instruction goes only to the contributory negligence of the plaintiff, and in actions of this character, contributory negligence is held to be a defense. [Spiva v. Osage Coal & Mining Co., 88 Mo. 68; Wendler v. People's House Furnishing Co., 165 Mo. 527.]

In the first-named case, at page 74, we said: "The duties imposed by the statute were for the health and safety of those engaged in mining labor and occupation, and entitled to its benefits, but it is not the intention of the act, or policy of the law, to exempt any from the direct and immediate consequence of his own carelessness. [Reynolds v. Hindman, 32 Ia. 146; Railroad v. Ward, 61 Ill. 130; Beaucoup Coal Co. v. Cooper, 12 Brad. (Ill. App.) 373.] The right of action accruing to the widow under the statute is such as would have existed in the husband's favor if death had not ensued, and none other, and as we hold that the husband could not, under the evidence, have maintained the action, if he had survived the accident, a recovery must be denied plaintiff upon the same ground."

In discussing the same statute, in Durant v. Lexington Coal Mining Co., 97 Mo. l. c. 66, BLACK, J., said: "But we do not say in this case that plaintiff could recover if guilty of negligence himself."

It would, therefore, appear that, notwithstanding a statutory duty has been imposed, and there has been a failure to perform that duty, yet the defendant, so failing in the performance of the statutory duty, can avail himself of the plea of contributory negligence.

The plea of assumption of risk may rest upon a different basis, and we do not discuss it, for the reason that while the court refused to strike out such plea in the answer, yet, when the case was submitted to the jury, the instructions submitted no such issue. What we do say is that the contributory negligence of the plaintiff in such cases is held to be a proper defense, and this instruction properly covers that phase of the case.

What we have said of instruction numbered 3 applies with equal force to instruction numbered 4. This instruction covers the same ground as instruction numbered 3, except that it is a little more specific in language. Both cover the same proposition and were proper. Either could have been omitted, and the law of the case would have been properly declared upon this point. The trial court simply gave two instructions, worded somewhat differently, covering the same question. This is not reversible error.

III. Instruction numbered 6 given for the defendant is criticised. This instruction reads: "The court instructs the jury that even though you believe from the evidence that the gearing on the machine in question was entirely unguarded, yet if you further believe and find from the evidence that the presence of said gear wheels and the fact that said gear wheels were uncovered was known to the plaintiff and if you further believe from the evidence that the danger of working near the same was open and obvious and was known to plaintiff, and was so obvious and imminent that a person of ordinary prudence would not have continued to work near said gear or cog-wheels, then and in that case your verdict must be for the defendant."

This instruction does not so much state the assumption of risk, as it does the negligence of plaintiff in remaining in a place of obvious and known danger. The instruction says, "and was so obvious and immi-

nent that a person of *ordinary prudence* would not have continued to work near said gear or cog-wheels, then and in that case your verdict must be for the defendant.'' This instruction is really based upon the idea that if an employee knows that a place furnished by the master is so obviously and imminently dangerous that an ordinarily prudent person would not remain at work thereat, then it is contributory negligence upon his part to remain there and for that reason there can be no recovery. In the case at bar a photograph of the situation together with oral testimony as to surrounding conditions was before the jury, and we think the instruction proper.

IV. Plaintiff assails the action of the court in giving this instruction: ''The court instructs the jury that in a suit of this kind it is the duty of the jury to base their verdict solely upon the evidence in the case and the instructions given by the court.''

There is at least no reversible error in this instruction. Plaintiff was an individual and defendant a corporation, as shown by the record. The court no doubt had this fact in view and in the use of the words ''of this kind'' evidently meant cases wherein an individual was on one side and a corporation on the other. Instructions, differently worded, but conveying the same idea, have often been given and never especially condemned by this court. Many times have the courts instructed juries to the effect that the fact that the plaintiff is an individual and the defendant is a corporation, should not be considered in making up their verdict, and that their verdict should be made up solely upon the evidence and upon the law as declared in the instructions, and we have never condemned the admonitions of the courts given in this way. As we take it the instruction above is nothing more than the kindly admonition of the court frequently given in the manner

as we have indicated.  This contention is therefore ruled against the plaintiff.

V.  In the course of the cross-examination of the witnesses produced by plaintiff, the court permitted the defendant, over the objection of the plaintiff, to show that the witnesses were members of the same bakers' union to which plaintiff belonged.  The objections were general ones and we might content ourselves by saying that they were properly overruled for that reason, but will not so say and therefore consider the matter upon its merits, as if the objections had been filled with substantially stated reasons.  In this we may violate established precedent, and we think we do so violate it.  Can we say that it is improper thus to inquire of a witness with a view of determining the relationship of the witnesses to the party, as tending to affect the credibility of their testimony?  We think not.  We show relationship by blood or marriage, however distant, for that purpose.  [State v. Miles, 199 Mo. 530.] In this case it was held that it could be shown that the witness was a suitor of defendant's daughter as tending to affect the credibility of the witness.  We show that the witness and the party are close friends for that purpose.  We likewise permit it to be shown that the witness entertains an unfriendly feeling toward the party for that purpose.  We cannot blind ourselves to matters of public cognizance.  We know that there are close bonds between members of unions, as we know that there are close bonds between the members of any other secret order.  We know in the matter of unions, although such unions are and may be proper, that the purpose thereof is to protect the employee as against the acts of the employer, as well as to elevate the cause of labor itself.  In other words there is a dual purpose. We know that in such unions and the members thereof we have fellow-workers in the same cause, as is true of all other secret societies, to which the general pub-

lic are not admitted. That there is a brotherly feeling in unions as well as in all other secret orders, there can be no question. Common observation teaches us this. There is fellow-feeling between the members of the Masonic and other orders. Who ever belonged to a school society, and has not in after years felt the warmth of feeling and friendship in meeting another member of the same order, although they were not together at the same time or term. Knowing that these feelings exist shall we close our eyes to the fact that such relationship might influence the testimony and that such relationship, or all other friendly relationships, should not be shown upon the question of the credibility of the witness? We do not mean that the witness is to be necessarily discredited by reason of the facts, but we do mean to say that such facts are proper to be considered by the jury, in determining the weight of the testimony of such witness or witnesses. It is simply evidence to go to the jury for what it is worth and the jury judges as to the probative force thereof. Nor do we mean to say that unions or secret orders are improper. What we do mean to say is that such relationship may be shown as was done in this case. On the other hand, had there been a manufacturers' union, and members thereof had been called for defendant, it would have been proper to have inquired of such witnesses as to whether or not they belonged to such union. There is a close community of interests in all these unions, whether it be of the employee on the one hand or the employer on the other. In each the bonds of union are strong as we are taught by common observation. In each class there is a warmth of fellow-feeling going even beyond the mere domain of friendship. They have a common business purpose, and are as closely allied in the prosecution of that purpose as would be two partners in a business project. They may not be as closely interested as are partners, but

they are interested in the promotion of a certain and definite purpose, and in that way would be subjected to the same rule. Certainly, it would not be improper to ask a witness if he was not a partner of a party to a suit. We conclude, therefore, that there was no error in the admission of this evidence.

VI. As the case was never submitted to the jury on the question of the assumption of risk, the plaintiff could not have been prejudiced by the court's refusal to strike out that part of the answer. That portion of the answer was treated as abandoned in the submission of the case. The plea of contributory negligence was sufficiently broad to meet the requirements under our rulings, and there was no error in overruling the motion to make it more specific. However, these matters are not specially urged in the assignment of errors and we may be going beyond the rule to mention them in this opinion. They do appear in the record, however. We have considered all questions of merit, raised by this record, and it follows from what we have said, that the cause was fairly tried and submitted to the jury, and the judgment entered upon the verdict of the jury should be and is affirmed.

*Valliant, P. J.,* and *Lamm, J.,* concur; *Woodson, J.,* dissents in separate opinion filed herewith.

## DISSENTING OPINION.

WOODSON, J.—I am unable to concur in the opinion written herein by GRAVES, J., and hereby respectfully submit my reasons for such dissent.

This suit was instituted in the circuit court of the city of St. Louis for the recovery of $20,000 damages for personal injuries received by plaintiff through the alleged negligence of defendant while he was working in and about a dough-machine, operated and used in defendant's bakery.

The petition among other allegations contained the following:

"Plaintiff further states that it was the duty of said defendant company to safely and securely guard the belting, shafting, gearing and drums of the establishment, when possible, and when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties. And that said defendant company failed to safely and securely guard the belting, shafting, gearing and drums of its establishment, and that the said failure was in this, to-wit: That said gearing and cog-wheels of the said dough-mixing machine were at and prior to the 9th day of November, 1903, left wholly unguarded, and that said gearing, belting, shafting and drums were dangerous to plaintiff and persons employed therein or thereabout while engaged in their ordinary duties. And that said gearing, belting, shafting and drums could easily have been guarded so as to prevent injury to plaintiff and persons while in the exercise of their ordinary duties.

"Plaintiff further states that defendant negligently permitted the floor of said establishment, particularly in the neighborhood of the said dough-mixing machine, to become dangerous and unsafe for any person to walk over and that defendant allowed a barrel or barrels of baking-oil to stand within a few feet from said machine, from which quantities of baking-oil did escape and make the floor in the neighborhood of plaintiff's said machine, on said 9th day of November, 1903, greasy and slippery, so that the said floor could not be walked over without danger of falling.

"Plaintiff further states that on or about the 9th day of November, 1903, while plaintiff was in the active discharge of the ordinary duties of his employment, and while plaintiff was in the exercise of ordinary care and prudence on his part, plaintiff slipped and fell by reason of the slippery and greasy condition of said

floor, whereby plaintiff's left hand was thrown into the
said cog-wheels and gearing of said dough-mixing ma-
chine, whereby he lost his first three fingers and part of
the palm of his said hand, and his little finger was per-
manently stiffened and crippled, and his thumb was
broken and bent and permanently stiffened and crip-
pled, and his entire hand thus rendered forever use-
less.

"That the said injuries received by plaintiff were
caused solely by the failure of defendant to guard the
said gearing and cog-wheels of said dough-mixing ma-
chine as it was the defendant's duty to do, and by rea-
son of the defendant's failing to keep the floor in its
establishment in the neighborhood of said dough-mix-
ing machine in a reasonably safe condition, as it was
defendant's duty to do."

The answer was a general denial, a plea of as-
sumed risks, and contributory negligence.

The facts are few and simple. The evidence shows
that the defendant was a corporation engaged in the
bakery business, and plaintiff was one of its employees.
Among other things defendant had in its establishment
was a dough-mixer for making bread; this piece of
machinery stood on a base and was some four feet in
height, with a table and rollers in front on which and
into which the dough was fed; at the end of the machine
and to the right thereof there were two gear-wheels,
one large and the other a small one; these wheels
stood perpendicular, with the larger above the smaller
and with the top of the former reaching to about the
top of the machine and extending down to within about
twenty inches of the floor; this wheel geared with the
small one at the lowest point, and when in motion they
propelled and operated the dough-mixer.

Just to the right of the mixer there was an aisle
some eight feet in width; in this aisle next to the wall
of the building was located a barrel of oil, which was

used in making the bread; the oil from the barrel would leak out, more or less, and spread over the floor. In making the bread the employees would spill flour upon the floor, and when it came in contact with the oil it formed a dough or paste which made the floor more or less slippery.

The gearing of the machine was in no manner protected or guarded, and, from the evidence and the photograph of the machine, as preserved in the record, it is clearly seen that the gearing could have been perfectly protected and guarded.

It was the duty of the plaintiff to stand in front of the machine and feed into it dough, the intake of which was about three feet above the floor. It was also plaintiff's duty to walk along and across said aisle to the barrel containing the oil, which was to his right, and draw therefrom the oil to use in the dough, and to return in the same way to his place of labor.

The evidence tended to show that it was the duty of plaintiff and some other employees to keep the aisle clean and free from the oil and flour, which happened to leak and to be spilt upon the floor; and that plaintiff failed to keep the aisle clean upon this occasion.

While walking along the slippery aisle the plaintiff, in the performance of his duties, slipped and fell, and, in doing so, his hand was caught in the gearing of the machine, and he sustained in consequence thereof the injuries sued for.

At the request of the defendant, and over the objections of the plaintiff, the court gave the following instructions:

"1.    The court instructs the jury that if you believe from the evidence that the gearing upon the machine in question could not be safely and securely guarded without materially interfering with the efficient working of the machine in question, then and in

that case the failure to so guard said gearing constituted no negligence on the part of defendant.

"2. The court instructs the jury that it was the duty of the plaintiff while working in the vicinity of the machine in question to exercise ordinary care for his' own safety, that is, such care as a person of ordinary prudence exercises under the same or similar circumstances. And the court instructs the jury that if you believe from the evidence that one of the duties of plaintiff as an employee of defendant was to keep clean the floor in the vicinity of the machine in question, and had the plaintiff fulfilled the said duty on the occasion in question, he would not have slipped and would not have caught his hand in the gearing in question, then and in that case your verdict must be for the defendant."

The verdict and judgment were for defendant, and, after taking the necessary steps, the plaintiff appealed the cause to this court.

I. The plaintiff first insists that the action of the trial court in giving instruction numbered one was erroneous, and did not correctly declare the law to the jury.

In order to determine that question, we will have to determine the meaning of section 6433, Revised Statutes 1899, upon which this suit is based. It reads as follows:

"The belting, shafting, gearing and drums in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

In order to understand the true meaning of a statute, we must first ascertain what the law was upon that

subject prior to the passage of the act, and in that light look at the evil which the Legislature intended to abolish by the enactment; and then such construction should be given the act as will carry out that intention.

This is one of the elementary rules of construction to be applied to statutes; and VALLIANT, J., very clearly and tersely stated it in this language: "To get at the true meaning of language employed in a statute we must look at the whole purpose of the act, the law as it was before the enactment and the change in the law intended to be made." [Pembroke v. Huston, 180 Mo. l. c. 636.]

Now, what was the law governing master and servant when the servant was injured by unguarded machinery, prior to the passage of the statute in question? All of the authorities agree that it was only the duty of the master to furnish the servant a reasonably safe place and reasonably safe appliances with which to do his work; and if the master performed those duties, the servant could not recover damages for injuries received in consequence of coming in contact with the machinery; and that law was applicable to all injuries sustained by the servant and it was wholly immaterial whether the injury was the result of his own negligence and carelessness or whether it was the result of an assumed risk, which is always a mere accident, nothing more nor nothing less, because where neither the master nor the servant was guilty of negligence which caused or contributed to the injury, then all the books hold that the injury was the result of an accident, or an assumed risk, which, as above stated, are one and the same thing, and for neither of which is the master liable. These views are so elementary and well grounded in the jurisprudence of this State and Nation that it would be a useless and a foolish waste of time and energy to cite authorities in support thereof. [Zeis v.

St. Louis Brewing Assn., 205 Mo. 638; Henry v. Railroad, 113 Mo. l. c. 537.]

That being the law governing master and servant at the time of the enactment of the statute, now let us see what evil the Legislature had in mind and wished to remedy by the passage of the act.

The statistics and labor reports of the United States and the various states and territories thereof disclose the appalling fact that, annually, there were either killed or injured by various means and in various ways in the mines, the labor and transportational industries of this country more than 500,000 employees, and out of this grew the saying which has been given such wide publicity in this and foreign countries that "The United States is a nation of cripples." Congress and the legislatures of the various states and territories knew those facts, because they are matters of public record, generally found in reports made to those bodies by the proper officials of each state, and are of common knowledge and general understanding. Those bodies who had knowledge of those facts, and who possessed the power and whose duty it was to correct those evils attempted to do so by the enactment of appropriate statutes, and as a result thereof the United States, and almost if not all of the states and territories, passed statutes in some form or another looking toward the correction of those evils and to stop as near as possible the mighty slaughter which was going on in the industrial institutions of this country. This State was among the first to enact such statutes, and in 1891 the Legislature passed the act in question. It knew, as this court knows from the reports of the tribunals throughout the country, that most of those injuries arose from the dangers incident to the employment and to the operation of powerful machinery where neither master

nor servant was guilty of negligence, but where both had exercised reasonable care.

We have thus briefly stated the law governing master and servant, the dangers attending the servant in the performance of his duties to the master, as well as the dangers incident to the operation of powerful and dangerous machinery.

These dangers were the subjects to which the statute relates, and we will now examine it and try and ascertain what object the Legislature had in mind and intended to accomplish by passing the act.

It requires all belting, shafting, gearing and drums contained in all manufacturing, mechanical and other institutions, when so *placed as to be dangerous to the employees* working therein or thereabout while engaged in the discharge of their duties, *to be safely and securely guarded when possible;* if not *possible,* then *notice of its danger shall be conspicuously posted* in such establishment.

When we read this entire section in the light of what the common law was upon the subject prior to its enactment, and the evils that existed thereunder, it is perfectly clear that it was the intention of the Legislature to change the common law governing master and servant, which only required him to furnish the servant a reasonably safe place and instrumentalities with which to perform his duties, and to establish instead thereof a much higher standard of duty upon the master. The day after this statute went into effect and operation the master no longer discharged his full duty to his employees by furnishing them with a reasonably safe place in which to work and reasonably safe means with which to perform their work, but he had to go much further than that and was required, where it was *possible,* to *safely and securely guard all gearing and drums* when placed so as to be dangerous to the employees. The gearing in this case falls within

the letter and spirit of the statute, and was so placed as to make it dangerous to the employees, as much so as any piece of gearing that could be pointed out in any such institution. Conceding that to be true, and we presume it will not be controverted, had defendant discharged its full duty to plaintiff, at the time he was injured, gauged by the standard of duty imposed upon it by this statute? Clearly not; the gearing was so placed as to be dangerous to plaintiff in the discharge of his duties to the master, and the record conclusively shows, beyond contradiction, that it was not only *possible to safely and securely guard it,* but it could have been done easily, readily, and we dare say at but little cost, not to exceed four or five dollars. Any ordinary mechanic or even a "jack at all trades" in a very short time could have taken two pieces of gas pipe, about four and a half feet long, and one about two and a half feet in length and screwed them together in the form of a rectangle, with an open base, and then placed it over the gearing and fastened the other ends of the pipes to the floor; and then covered the rectangle thus formed with a piece of sheet-iron or other suitable material; he could thereby have safely and securely guarded the gearing without interfering in the remotest degree with the working efficiency of the machine and could have thereby completely abolished or removed the danger which is pointed out by the statute, in express terms, and condemned thereby; but this was not done. The defendant continued to operate its machinery just as it had done before the enactment of the statute.

In our judgment this is one of the wisest and most humane statutes to be found upon our statute books, and should be given a broad and liberal interpretation, because it is remedial and highly salutary, intended to protect the employees from just such injuries as the one sustained by plaintiff in this case. The Legislature

knew that the human mind and conduct was such that a servant when in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not "safely and securely guarded," he would in consequence thereof receive injuries of a serious character. It was the intention of the Legislature and the object and the purpose of the statute to put a stop to all such injuries which grow out of such inattention, inadvertence, mishaps or accidents, that is, such acts of omission.

This is clearly manifested and emphasized by the last clause of this section of the statute. The Legislature was so solicitous of those matters and of the safety of the employees of such institutions, that it required, by this last clause, that when it was impossible for the master to safely and securely guard the machinery mentioned, notice of such dangers should be conspicuously posted in such establishments; evidently for the purpose of continuously and potently calling their attention to the dangers surrounding them, and thereby make them more watchful of the machinery and careful in their actions and motions about it.

So, in brief, the rationale of the statute is this: that where it is possible to do so, the master must safely and securely guard the belting, shafting, gearing and drums in his institution; but when that is impossible, then he must give the required notice. This increases the degree of care required of the master regarding those matters from reasonable care to an absolute duty to safely and securely guard such gearing, etc., where it is possible to do so without materially interfering with the working efficiency of the machinery of the in-

stitution; but if that is impossible, then he must post the required notice; and if he fails in the performance of those duties, then the burden rests upon him to show that the servant was guilty of such contributory negligence that he would have been injured in consequence thereof, even though the gearing, etc., had been so guarded, or that the notice had been properly posted.

It should be borne in mind, however, that this statute in no manner increases or diminishes the degree of care the master owes his servant, except in regard to the specific matters mentioned therein.

In view of these observations as to the meaning of the statute, let us examine the instructions given by the court on behalf of the defendant in this case.

The first instruction given told the jury, in effect, that if they believed from the evidence that the gearing of the dough-machine could not be safely and securely guarded without materially interfering with its working efficiency, then they should find for the defendant.

This instruction is erroneous, for the reason, first, because there is no evidence in the record upon which to base it, or to warrant the court in submitting that issue to the jury. It was not only possible to so guard the gearing of the machine, but the physical facts of the case show beyond question that any ordinary mechanic, at a trifling cost, could have easily constructed a safe guard therefor which would not have interfered in the remotest degree with the operation of the machine.

This court has many times held that "words cannot be believed when contradicted, as they are, by the physical facts. 'Neither courts nor juries should be required to base their actions or belief on physical impossibilities.'" [State v. Turlington, 102 Mo. l. c. 663; State v. Anderson, 89 Mo. l. c. 332; State v. Bryant, 102 Mo. l. c. 32.]

A simple glance at the photograph of the machine and its gearing shows conclusively that it could have been easily guarded without interfering in the remotest degree with the working efficiency of the machine.

And, second, the instruction is erroneous because it is no defense under this statute to show that it was impossible to safely guard the gearing of the dough-machine, without it is further shown that the master properly posted the notice required by the statute, and in this case there is no pretense that such notice was posted.

Conceding, for the argument's sake, that it was impossible to safely guard the gearing without materially interfering with the working efficiency of the dough-mixer, how can it be declared as a matter of law that the plaintiff would have been injured, even though the notice had been posted as required by the statute?

That is the plain meaning of the instruction, and, in effect, so told the jury, because it omits to tell the jury that the notice was not posted, and that in that case it was a qeustion for them to determine from all the evidence and facts and circumstances, whether or not the injury would have occurred even though the notice had been posted. The jury might well have found that the plaintiff would have been guarded in his movements had he been *continuously* warned of the dangers surrounding him. Not only that, the Legislature has said in no uncertain terms that notice should be posted, and there can be no doubt but what the intention of the Legislature was to continuously call the attention of the employees to those dangers, and thereby cause him to be more vigilant and careful of his movements and safety. "A thing which is in the intention of the makers of the statute is as much within the statute as if it were within the letter." [Riddick v. Walsh, 15 Mo. 519.]

We are, therefore, clearly of the opinion that said instruction does not properly declare the law as stated in the statute.

But the defendant insists that even though its said instruction is erroneous in the manner above stated, yet it contends that plaintiff is in no position to take advantage of those errors, because instruction number 1 asked by himself and given by the court is subject to the same objections, and that he led the court into the commission of the error, and that he should not now be heard to complain of the action of the court which was brought about at his own solicitation.

After a careful reading of plaintiff's said instruction, we are of the opinion that it is subject to the same objections which he urges against defendant's first instruction, and for that reason, under the well-established law of this State, he is in no position to complain of the errors pointed out in defendant's instruction. A party cannot complain of an instruction which is in harmony with one given at his own request. [Thorpe v. Railroad, 89 Mo. 650.]

II. The plaintiff next complains of the court for giving instruction number 3 on behalf of defendant. This instruction, in effect, told the jury that it was the duty of plaintiff while working in the vicinity of the machine to exercise ordinary care for his own safety, and that if they found that it was his duty to keep the aisle clean, and had he done so he would not have slipped and been injured, then they would find for the defendant.

There are three fatal objections to this instruction. In the first place, it completely ignores the statute upon which this case is bottomed and which establishes the degree of care required of defendant toward plaintiff, regarding the placing of secure guards around the gearing in its establishment, and told the jury that if he failed to exercise ordinary care, under the circum-

stances, for his safety, then they would find for the defendant. What were the circumstances? Exposed gearing, which was so placed by defendant as to endanger the safety of plaintiff. In that case the *statute expressly commands* the defendant to securely guard it, but he neglected to do it. Had he done so the injury might not have occurred. In any event it should have been left to the jury to have said whether or not plaintiff's negligence was of such a character as would have caused the injury even though the gearing had been guarded, as required by the statute.

This instruction of defendant is based upon the theory that the common law prescribed the standard of duty the defendant owed the plaintiff in this case. That is not the law. Section 6433 prescribed a much higher degree of duty to be exercised by defendant toward the plaintiff than did the common law. Under the common law the defendant was required to furnish plaintiff only a reasonably safe place in which to work and reasonably safe means with which to perform his duties, while the statutes require the defendant to safely and securely guard the gearing when possible; and, if impossible, then to conspicuously post a notice calling attention to the dangers.

As a corollary to that increased duty of defendant, the care of the plaintiff was correspondingly decreased, and the jury should have been told so in no uncertain words.

The effect of the instruction given is to completely emasculate and nullify the statute, violate the legislative intention, and to direct the industrial institutions of this country to march on and continue the frightful and appalling slaughter of human beings. It was the intention of the Legislature by this statute to put a stop to this great sacrifice of human life upon the altars of industry as far as it is possible, by requiring the shafting, belting, gearing and drums of such institutions to

be safely and securely guarded, where it was possible to do so; and we think that it is the plain duty of the courts to give that statute the broadest and most liberal interpretation, in order to carry out the humane purposes thereof.

The second error contained in this instruction is couched in that part which told the jury that if they found from the evidence that it was plaintiff's duty to keep clean the floor in question, and had he done so he would not have fallen and would not have been injured, then they would find for the defendant.

Clearly the failure of the plaintiff to keep clean the floor along the aisle was, at most, only an inducing or remote cause of the injury, while the *direct and proximate* cause thereof was clearly the failure of the defendant to safely and securely guard the gearing.

It is perfectly clear that had the defendant "*safely and securely guarded*" *the gearing in question* and there is not a shadow of doubt but what it could have been done, the injury would not have occurred, notwithstanding the fact that plaintiff failed to clean the floor and fell in consequence thereof.

The law in this State is well settled that unless the acts of the injured party are the direct and proximate cause of his injury, the party occasioning the injury will not be excused on the ground of contributory negligence. [Kennayde v. Railroad, 45 Mo. 255; Meyers v. Railroad, 59 Mo. 223.]

"Mere negligence without a resulting damage can no more be pleaded as contributory negligence to defeat an action than it can be charged as an original cause of action." [Dickson v. Railroad, 124 Mo. l. c. 149.]

And this court has many times held that, "Though the plaintiff was guilty of negligence which remotely contributed to the injury, yet if the defendant could, by the exercise of ordinary care and prudence, have prevented it, he is liable." [Kennedy v. Railroad, 36

Mo. 351; McKeon v. Railroad, 42 Mo. 79; Morrissey v. Wiggins Ferry Co., 43 Mo. 380; Fitch v. Railroad, 45 Mo. 322; Burham v. Railroad, 56 Mo. 338; Walsh v. Miss. Valley Trans. Co., 52 Mo. 434; Whalen v. Railroad, 60 Mo. 323; Moore v. Railroad, 126 Mo. 265.]

Can it be seriously contended that defendant could not have prevented this injury by *"safely and securely guarding"* the gearing in question? The simple asking of the question carries with it its own answer—No. Or can it be seriously argued that plaintiff's failure to clean the floor was more than an inducing or a remote cause of the injury within the meaning of the above adjudications of this court? We think not. By the exercise of the slightest care defendant could have prevented the injury by placing the guards about the gearing as the statute in express terms required it to do.

The third error contained in this instruction consists in telling the jury that if they believe that one of the duties of the plaintiff was to keep clean the floor of the building, "and had the plaintiff fulfilled the said duty on the occasion in question, he would not have slipped and would not have caught his hand in the gearing in question," then they should find for the defendant. By the use of the language quoted the instruction assumed the plaintiff did not fulfill his duty by keeping clean the floor in question. That question was one of the essence of the case as it was presented to the jury to pass upon, and if it should become material in the next trial of the cause, it should be left to the jury to say whether or not he kept the floor clean, and the court should not either in express words nor by implication tell the jury that any issuable fact is or is not established when there is evidence on both sides of the proposition.

Instruction number 4 given on behalf of plaintiff is subject to the same objections as those pointed out in instruction number 3 above mentioned.

III.  Instruction number 6 given at the request of defendant told the jury that if the gearing was unguarded, and plaintiff knew that fact, and that the dangers thereof were so *obvious and imminent that a person of ordinary prudence* would not have continued to work near said gear-wheels, then the jury should find for the defendant.

The vice of this instruction is, that it has not a scintilla of evidence upon which to rest.

While it is always dangerous to work about machinery in operation, yet there is not a particle of evidence which tended in the remotest degree to show that the danger was so "obvious and imminent" that a person of ordinary prudence would not have continued in the employment of the defendant on that account; but, upon the other hand, the evidence and a photograph of the machine, preserved in the record, shows that the gearing consisted simply of two cog-wheels, one large and the other a small one; that they were firmly and securely fastened to the end of the dough-mixing machine, at which plaintiff worked, and just to his right, and one geared into the other, and when in motion they propelled the machine.  The evidence also shows that plaintiff actually worked at this identical machine three years prior to this injury without being hurt thereby.

If it were not for said section 6433 of the statutes, and if the common law still governed such cases, could it be logically contended under the showing made by this record that the dangers incident to its operation were so obvious and imminent that the law would deny plaintiff all relief because he remained in the employ of defendant, if he otherwise made out a prima-facie case?  Clearly not; nor do we believe, in the absence of the statute mentioned, the defendant would have been guilty of any negligence whatever in furnishing plaintiff this identical machine with which to perform his duties.  In other words, suppose, for the present,

we eliminate the statute from the case, and suppose the plaintiff had presented this identical case, upon the identical evidence preserved in this record, then could it even be seriously contended that the plaintiff had made out a prima-facie case and was entitled to go to the jury? Unquestionably, we think not, and, if that be true, then how much less merit·is there in the defendant's contention that there was evidence in the case which justified the court in submitting to the jury the question of *"obvious and imminent dangers."*

The law is well settled that even though the machinery is dangerous, yet if it "is not so much so as to threaten immediate injury, or when it is reasonable to suppose that it may be safely used with great caution or skill," then it is not negligence on the part of plaintiff to continue in the employment. [Stoddard v. Railroad, 65 Mo. 1. c. 521; Thorpe v. Railroad, 89 Mo. 1. c. 662.]

There was no evidence in this case to take plaintiff's case out of the rule above quoted, and for that reason the sixth instruction given for defendant should have been refused.

IV. Plaintiff lastly insists that the court erred in permitting counsel for defendant to ask the witnesses for the plaintiff if they and the plaintiff were not members of the same bakers' union, and in requiring them to answer the questions. This evidence was admitted for the purpose of showing the relation that existed between the plaintiff and his witnesses, in order that the jury might take that fact into consideration in determining what weight it should give to their testimony. Such evidence is always admissible.

Because of the errors herein pointed out, committed by the trial court, I think the judgment should be reversed and the cause remanded for a new trial.