## R. B. COLE, Appellant, v. NORTH AMERICAN LEAD COMPANY.

### Division One, February 29, 1912.

1. **NEGLIGENCE: Guarding Machinery: Knives of Planing Mill: Statute.** The Statute (Sec. 6433, R. S. 1899) requiring "the belting, shafting, gearing and drums" in all manufacturing and mechanical establishments, to be safely and securely guarded when possible, limits the guards to those parts only, and does not embrace all dangerous parts of the machinery. Those words do not include or embrace the planing knives of a planing machine "set in a cylinder or axle or shaft which rapidly rotated and which was run by a belt leading to a shaft in the floor." The word "shafting" does not include either the knives or the

axle or shaft in which they were set. And where plaintiff's fingers were cut off by the knives, as he was operating the machine, and his petition counted on defendant's failure to guard the knives, in violation of the statute, and that negligence only, a demurrer to his case was properly sustained. [Disapproving Millsap v. Beggs, 122 Mo. App. 1.]

2. ———: ———: **Master's Common Law Liability.** The statute did not change the master's common law liability to provide a reasonably safe place in which and reasonably safe tools with which his servants may perform their work, except to impose on him the duty to safely and securely guard the belting, shafting, gearing and drums of the machinery, where that is possible, and where that is impossible, to post notice of its danger; otherwise, the master's liability remains as it did at common law.

Appeal from Madison Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*B. H. Boyer* and *T. B. Burks* for appellant.

*E. D. Anthony* and *W. S. Fordyce* for respondent.

*Conkling, Rea & Sparrow amici curiae.*

WOODSON, J.—This is an action for damages for personal injuries sustained by appellant through the alleged negligence of the respondent; and is here on certification by the St. Louis Court of Appeals, for the reason that the opinion thereof is in conflict with the opinion of the Kansas City Court of Appeals, in the case of Millsap v. Beggs, 122 Mo. App. 1.

The former opinion is as follows:

"This plaintiff lost part of his right hand in consequence of its slipping against the knives of a planing machine in defendant's factory, and instituted this action for damages. The machine consisted of a metallic table, with a smooth surface. The table, which is about a foot in width, is divided into two sections, the sec-

tion in front of the knives being adjustable at different heights. Between the two sections were the planing knives. They were set in a cylinder or axle which rotated rapidly. In planing the operator would lower the adjustable table so the surface of the board to be planed would be cut to the proper depth and would then slide the board against and over the knives, passing it over the stationary end of the table behind the knives. The pedestal on which the table was placed had two openings in the side under the table and near the floor. Shavings would fall into this pedestal and either pass out at the opening or be raked out by the operator. If allowed to remain in the pedestal, they would choke the machine. The shaft or axle on which the knives were fixed was run by a belt leading to a shaft in the floor of the shop, which shaft was in turn connected with a belt running on a countershaft near the ceiling. All the machinery in the room was operated by power transmitted from the engine room by shafting. This plaintiff, in obedience to an order from his foreman, undertook to plane a piece of timber, at the time the planing machine was idle, but plaintiff adjusted the belting so as to set it in motion. After it had started he stooped to rake some shavings from the pedestal with his left hand, having his right hand not far from the knives at the time. As he raised from his stooping posture, he stepped on a block of wood lying on the floor and covered with shavings. The block turned, throwing plaintiff off his balance and his right hand against the knives of the planer, which lopped off a portion of three of his fingers and his thumb. At the conclusion of the testimony the court directed a verdict for defendant and plaintiff appealed.

"A careful study of the pleadings and evidence has satisfied us there is only one question of doubt raised on the appeal; that is, whether or not the planing machine ought to have been guarded in obedience

to the statute, which says: 'The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments.' [R. S. 1899, sec. 6433.]

"The petition avers it was possible at all times to securely guard the planing machine and knives and thereby make them safe, and asks damages for failure to guard them, and does not count on negligence in not posting notices that the knives were unguarded on the theory that it was impossible to guard them. Other assignments of negligence are contained in the petition, based on the failure of defendant to guard belts, pulleys and other shafting in the room, and on allowing debris and shavings to accumulate on the floor of the room; but we are satisfied no case was made on those facts. Omission to guard other portions of the machinery was not the proximate cause of the accident, and the circumstance that some shavings were on the floor was not actionable negligence. Unless the defendant was remiss in omitting to guard the knives of the planer, the case must be classed as an accidental casualty for which the defendant is not responsible. Plaintiff testified the knives could have been guarded without interfering with the use of the planer and undertook to state how this could have been done. It is far from clear to our minds that it could have been, but perhaps the question would be for the jury if the machine falls within the scope of the statute. The lower court held the statute 'did not apply to working parts of the machine, but only to the parts used in transmitting power—gearing, pulleys, shafting and drums;' that it covered only parts of machinery used 'to transmit power to the working

parts—belts, shafts, pulleys and cog wheels.' In Millsap v. Beggs, 122 Mo. App. 1, a machine precisely like the one by which plaintiff was hurt, as far as we are able to determine from the description in the opinion, was held to come within the statute. The court said, after describing the planer: 'We conclude that this horizontal instrument with knives fastened therein, was "shafting" in the sense and meaning of the statute. We think it wholly unlike the machine described in Smith v. Forrester-Nace Box Co., 193 Mo. 715, and that that case is not applicable.' If the statute required the machine in question to be guarded, it is because it was 'shafting' within the meaning of that word as used in the statute. 'Shafting' is defined in the Standard Dictionary as follows: 'A system of stout rods or shafts, usually cylindrical, mounted in bearings and serving to carry pulleys, gear-wheels or the like, for communicating power, as from a motor to machines.' Webster defines the word as meaning 'a system of connecting shafts for communicating motion.' Shafting appears to have a different meaning in mechanics from 'shaft,' which is defined in the Standard Dictionary as 'an axle, mandrel, arbor, or other long and usually cylindrical bar, especially if rotating, and subject to torsional stress; as a steamer-shaft; a fly-wheel shaft.' It is also defined in the same work as 'a length of shafting.' It may be said the metal cylinder in which the knives were set was a shaft, without outraging the meaning of the term. So it might be said they were set in an axle or on a rod. A saw rotating on an axle is, in a certain sense, set on a shaft, or shafting; and perhaps the same may be said of other tools. The point is whether the word 'shafting' in the statute includes such a meaning. The connection in which the word is used, along with belting, gearing and drums, indicates the statute is intended to apply, not to tools proper, but

to mechanical devices by which the tools are operated; that is, by which power is transmitted to them to rotate them or impart other motion to them. In Smith v. Forrester-Nace Box Co., 193 Mo. 715, it appeared the plaintiff was injured while working with a planing machine, but his injury resulted from his hand being caught between two rollers in the rear of the planing knives over which the planed boards ran. The Supreme Court held those rollers were not 'shafting' within the sense of the statute, and the proprietor was not required to guard them. We are mindful of the fact that this statute is remedial and ought to be liberally construed to realize the purpose of the Legislature. [Lore v. Manufacturing Co., 160 Mo. 608.] But it cannot be extended beyond the meaning its words will bear. It looks to us like the planing knives, though set in a shaft or axle, were in substance a tool and not shafting, and hence not covered by the statute. The statutes require all words used in a law, except technical ones, to be given their usual sense, and technical words to be given their import as used by experts. [R. S. 1899, sec. 4160.] No layman would describe the planer as 'shafting,' and according to the dictionaries, the word 'shafting' technically used, does not include in its meaning a planer like the one in question.

"It is contended for defendant that plaintiff was guilty of negligence contributing to his injury and hence was not entitled to recover even if the statute was violated. We find no evidence in the record which would justify a court in holding he was guilty of contributory negligence as a matter of law. The case turned on whether or not the defendant failed to comply with its statutory duty. We hold it did not, and affirm the judgment; but as we deem our decision in conflict with that of the Kansas City Court of Appeals, in Millsap v. Beggs, supra, we certify the

cause to the Supreme Court for final decision. It is so ordered. All concur.—RICHARD L. GOODE, J."

On account of the much interest manifested in this case, and the earnestness with which the legal propositions are discussed, we deem it best to add a few observations to the able opinion delivered by the St. Louis Court of Appeals.

The questions involved are well briefed and ably discussed by counsel for both parties; and we are also favored with an able brief and argument by counsel *amici curiae.*

A clearer insight will be had of the case, if we keep in mind the statute, upon which the cause of action, as stated in the petition, is predicated, namely, section 6433, Revised Statutes 1899, which reads as follows:

"The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

From this reading of the statute, it is seen that it does not require the entire machinery in the establishment mentioned to be guarded, nor all of the parts thereof, but it simply provides that the "belting, shafting, gearing and drums" shall be safely guarded.

It seems to us that the old maxim, *"Expressio unius est exclusio alterius,"* applies here with great force and effect; for otherwise, why did the Legislature single out and name those four parts of this class of machinery and require them to be safely guarded, if it was not the design to limit the guards to those parts alone, but did intend to embrace all parts of the machinery, when so placed as to be dangerous to persons employed therein.

And especially does that seem to be the intention of the Legislature, when we remember that prior to that enactment operators of machinery could with perfect impunity leave all parts of their machinery unguarded and incur no legal liability whatever on that account, except probably in those cases where other negligence might contribute therewith and cause an injury.

Now it is common knowledge that the belting, shafting, gearing and drums constitute a very small part of the machinery employed in the great manufacturing establishments of the State and throughout the country. If all four of those parts should be detached and removed from such a building, I dare say, they would scarcely be noticed, except by the skilled eye of the machinist. It is also common knowledge that the four parts mentioned, and required by the statute to be safely guarded, constitute no part of the power plant proper, nor of the machinery proper, which produces the fabric or finished product. Those four parts are the connecting links as it were, between the two, carrying the power from the former and delivering it to and distributing it throughout the latter. Common observation and experience also teach us that in the absence of negligence on the part of employers, there are comparatively few cases of personal injuries inflicted by the engine itself, or by the machinery proper; both of which while in operation are under the constant care and observation of the employees, which enables them to keep out of danger. But not so with regard to the belting, shafting, gearing and drums. There is no occasion for those employees to observe them while discharging their ordinary duties about the machine proper. Those four parts relate to the power, which is furnished and as a rule cared for by a different set of employees; and being thus collateral to the ordinary duties of those who operate the machinery, their eyes and attention

are not constantly drawn thereto as they are to the machinery which they are operating.

While, as previously stated, this belting, shafting, gearing and drums are in a sense collateral to the ordinary duties of the employees, yet their turning, tumbling, running and grinding close by and unobserved by the employees, while performing their ordinary duties about the machine proper, render them exceedingly dangerous, and when unprotected, they inflict great personal injury, if not death, upon all who, in an unguarded moment, should happen to step against, lay a hand upon or fall into or upon any of them.

This common knowledge was shared in by the members of the Legislature, in common with all the citizens of the State, and doubtless led to the enactment of the statute in question, which was evidently designed, as previously pointed out, to guard the four parts named, they being the most dangerous, while all of the remaining parts, which were not so dangerous, were unaffected by the statute, but retained their *status quo* under the common law. Not only that, but from a careful reading of the entire act, it will be seen that the Legislature at all times had in mind, not only the safety of the employees, but also the practicability of even guarding the parts mentioned. If they could not be guarded without interference with the operation of the machinery, then the guards were to be dispensed with, and notices were to be substituted.

In the case of Huss v. Heydt Bakery Co., 210 Mo. 44, l. c. 59, in a dissenting opinion, I undertook to point out, at some length, the evils that were incident to this belting, shafting, etc., and the remedy designed by the Legislature. It was there said:

"When we read this entire section in the light of what the common law was upon the subject prior to its enactment and the evils that existed thereunder, it is perfectly clear that it was the intention of the Leg-

islature to change the common law governing master
and servant, which only required him to furnish the
servant a reasonably safe place and instrumentalities
with which to perform his duties, and to establish in-
stead thereof a much higher standard of duty upon the
master. The day after this statute went into effect
and operation the master no longer discharged his full
duty to his employees by furnishing them with a rea-
sonably safe place in which to work and reasonably
safe means with which to perform their work, but he
had to go much further than that, and was required,
where it was possible, to safely and securely guard all
gearing and drums when placed so as to be dangerous
to the employees. The gearing in this case falls with-
in the letter and spirit of the statute, and was so
placed as to make it dangerous to the employees, as
much so as any piece of gearing that could be pointed
out in any such institution. Conceding that to be true,
and we presume it will not be controverted, had de-
fendant discharged its full duty to plaintiff, at the
time he was injured, gauged by the standard of duty
imposed upon it by this statute? Clearly not; the
gearing was so placed as to be dangerous to plaintiff
in the discharge of his duties to the master, and the
record conclusively shows, beyond contradiction, that
it was not only possible to safely and securely guard
it, but it could have been done easily, readily, and we
dare say at but little cost, not to exceed four or five
dollars. Any ordinary mechanic or even a 'jack at all
trades' in a very short time could have taken two
pieces of gas pipe, about four and a half feet long, and
one about two and a half feet in length and screwed
them together in the form of a rectangle, with an open
base, and then placed it over the gearing and fastened
the other ends of the pipes to the floor; and then cov-
ered the rectangle thus formed with a piece of sheet-
iron or other suitable material; he could thereby have
safely and securely guarded the gearing without in-

terfering in the remotest degree with the working efficiency of the machine and could have thereby completely abolished or removed the danger which is pointed out by the statute, in express terms, and condemned thereby; but this was not done. The defendant continued to operate its machinery just as it had done before the enactment of the statute.

"In our judgment this is one of the wisest and most humane statutes to be found upon our statute books, and should be given a broad and liberal interpretation, because it is remedial and highly·salutary, intended to protect the employees from just such injuries as the one sustained by plaintiff in this case. The Legislature knew that the human mind and conduct was such that a servant when in the performance of his duties to his master, surrounded· by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not 'safely and securely guarded,' he would in consequence thereof receive injuries of a serious character. It was the intention of the Legislature and the object and the purpose of the statute to put a stop to all such injuries which grow out of such inattention, inadvertence, mishaps or accidents, that is, such acts of omission.

"This is clearly manifested and emphasized by the last clause of this section of the statute. The Legislature was so solicitous of those matters and of the safety of the employees of such institutions, that it required, by this last clause, that when it was impossible for the master to safely and securely guard the machinery mentioned, notice of such dangers should be conspicuously posted in such establishments; evidently for the purpose of continuously and potently calling their attention to the dangers surrounding

them, and thereby make them more watchful of the machinery and careful in their actions and motions about it.

"So, in brief, the rationale of the statute is this: That where it is possible to do so, the master must safely and securely guard the belting, shafting, gearing and drums in his institution; but when that is impossible, then he must give the required notice. This increases the degree of care required of the master regarding those matters from reasonable care to an absolute duty to safely and securely guard such gearing, etc., where it is possible to do so without materially interfering with the working efficiency of the machinery of the institution; but if that is impossible, then he must post the required notice; and if he fails in the performance of those duties, then the burden rests upon him to show that the servant was guilty of such contributory negligence that he would have been injured in consequence thereof, even though the gearing, etc., had been so guarded, or that the notice had been properly posted.

"It should be borne in mind, however, that this statute in no manner increases or diminishes the degree of care the master owes his servant, except in regard to the specific matters mentioned therein."

It will be seen by reading the last clause of the quotation, that I was then, and I am still, of the opinion that this statute did in no manner undertake to increase or diminish the degree or scope of the master's care toward his employees, beyond the guards expressly provided for therein.

I thought I took a much more liberal view of this statute than my learned associates did; but it was not my opinion then, nor is it now, that the provisions of that statute were or are sufficiently comprehensive to embrace the machinery, which it is charged caused the injury in this case. This statute left all parts of

this class of machinery open and unguarded just as it existed at common law.

The planer which inflicted the injury upon the appellant, is in no sense a belt, shaft, gear or a drum; no more so than an arm or leg is the body; because the former are attached to and form a part of the latter, does not alter the fact. While it is true the head, trunk and limbs constitute and form the body, just as the engines, boilers, belts, shafts, gears, drums and machinery constitute and make up a manufacturing plant, nevertheless the belts, shafts, gear and drums no more constitute the plant than the limbs constitute the body, and when spoken of separately and distinctly, as the statute speaks of the former, they are just as separate and distinct from the other parts of the plant, as the limb of a man or tree is distinct from the body or trunk.

For the reason stated by the St. Louis Court of Appeals, and because of the views here expressed, the judgment of the latter court should in our opinion, be affirmed, and the opinion of the Kansas City Court of Appeals, in the case of Millsap v. Beggs, 122 Mo. App. 1, should be overruled.

It is so ordered. All concur.