HUGH HUGHES, Appellant, v. THE D. E. MARSHALL CONTRACTING AND MANU-FACTURING COMPANY, Respondent.

**Kansas City Court of Appeals, April 5, 1915.**

1. **NEGLIGENCE: Appliances, Statute: Unguarded Machinery.** The plaintiff sued to recover damages from defendant for negligently maintaining an unguarded woodcutting machine, whereby he was injured. The plaintiff was standing at the back of the machine and reached over to secure a screwdriver lying on the front of the table, when his sleeve caught in the saw and his hand was drawn against the saw and mutilated. The saw was partly guarded but not so guarded as to comply with Sec. 7828, R. S. 1909, relating to the guarding of machinery, etc. *Held,* that plaintiff is entitled to recover under Sec. 7828, R. S. 1909, and that the trial court erred in granting a new trial.

2. ———: ———: ———. Sec. 7828, R. S. 1909, provides that all "belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties shall be safely and securely guarded where possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments," and it is negligence *per se* for an employer not to obey such requirements and he is liable for injury caused by failure to do so.

3. ———: ———: ———. Where it is possible to do so, the master must safely and securely guard the belting, shafting, gearing and drums in his institution, but when that is impossible, then he must give the required notice. If he fails in this, the burden is on him to prove that the servant was guilty of contributory negligence in that he would have been injured, even though the gearing, etc., had been so guarded, or that the notice had been properly posted.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

REVERSED AND REMANDED (*with instructions*).

*David F. Carson* and *Blackmar & Bundschu* for appellant.

The court below sustained defendant's motion for a new trial on the sole and only ground that he should have sustained its motion for an instruction in the nature of a demurrer at the close of plaintiff's evidence and at the close of all the evidence, and this plaintiff claims was error and as the court below gave that as his only reason therefor, we discuss it from that viewpoint only.    Simpson v. Iron Works, 249 Mo. 376; Millsap v. Beggs, 122 Mo. App. 1; Wilson v. Board of Education, 63 Mo. 137; Buckley v. Kansas City, 95 Mo. App. 188; Bender v. Railroad, 137 Mo. 240; Railroad v. Kellogg, 94 U. S. 469-467, 24 L. Ed. 256; Gillespie v. Railroad, 144 Mo. App. 508; Murrell v. Smith, 152 Mo. App. 95, 117; Holman v. Iron Co., 152 Mo. App. 672, 682; Davis v. Mercer Lbr. Co., 73 N. E. 899; McGinnis v. Printing Co., 99 S. W. 4, 122 Mo. App. 227; Miniea v. St. Louis Cooperage Co., 157 S. W. 1007, 175 Mo. App. 91; Lore v. Mfg. Co., 160 Mo. 608; Bassett v. City of St. Joseph, 53 Mo. 290; Adams v. Antles, 105 N. E. 931; Blanton v. Dold, 109 Mo. 64; Murphy v. Railroad, 115 Mo. 111; Lepper v. Stettson Post Co., 112 Pac. 514; Railroad v Clayton, 113 N. W. 1124; Dukette v. Northwestern Woodware Co., 111 Pac. 1065; Phillips v. Hamilton Brown Shoe Co., 165 . W. 1183; Bair v. Heibel, 77 S. W. 1017, 103 Mo. App. 624; Henderson v. Kansas City, 177 Mo. 477; Breshears v. United Iron Works Co., 157 S. W. 360, 171 Mo. App. 507; Austin v. Bluff City Shoe Co., 176 Mo. App. 546; Price v. Northern Electric Co., 142 Pac. 91.

*Hogsett & Boyle* for respondent.

The motion for new trial was properly sustained by the trial court for the reason given, to-wit, the contributory negligence of the plaintiff. Saling v. American Chicle Co., 177 Mo. App. 374; Dressie, Admr., v. Railroad, 145 Mo. App. 163; Hirsch v. Bread Company, 150 Mo. App. 162; Maupin v. Miller, 164 Mo. App. 149; Pohlmann v. American Car Foundry Co., 123 Mo. App. 219; Finuta v. American Mfg. Co., 174 Mo. App. 87; Doerr v. St. Louis Brewing Co., 176 Mo. 547; Smith v. Forrester-Nace Box Co., 193 Mo. 715; 3 Labatt on Master and Servant, page 3484, and cases there cited; German American Lumber Co. v. Hanna 53 So. 516, 30 L. R. A. (N. S.) 882; Bryan v. Hilton Lumber Co., 154 N. C. 485, 70 S. E. 936; Best v. Williamsport Staple Co., 218 Pa. 202, 67 Atl. 205; Mulholland v. Ideal Mfg. Co., 149 Mich. 126, 112 N. W. 483; Beltz v. American Mill Co., 37 Wash. 399, 79 Pac. 981; Newport News Pub. Co. v. Beaumeister, 102 Va. 677, 47 S. E. 821; Grace v. Globe Stove & Range Co., 40 Ind. App. 326, 82 N. E. 99; Bean v. Keller Mfg. Co., 107 Minn. 162, 119 N. W. 801; Kennedy v. Merrimock Paving Co., 185 Mass. 442, 70 N. E. 437; Glover v. Scotten, 82 Mich. 369, 46 N. W. 936; Erdman v. Deer River Lumber Co., 182 Fed. 42 (C. C. A.); Weltmer v. Bishop, 171 Mo. 110, 116; Payne v. Railroad, 136 Mo. 562; Ginley v. Railroad, 104 Mo. 211; Scroggins v. Railroad, 138 Mo. App. 215; Oglesby v. Railroad, 177 Mo. 296; Brosino v. Zinc Co., 149 Mo. App. 187; Speaks v. Railroad, 166 S. W. 864.

JOHNSON, J.—This is an action for personal injuries plaintiff received while operating a woodcutting machine in defendant's carpenter shop in Kansas City. His right hand was cut and permanently injured by a rapidly revolving circular saw which was a part of the machine and he alleges that negligence

of defendant, his employer, in not properly enclosing the saw and in allowing other parts of the machine to become defective and dangerous was the proximate cause of his injury. The answer is a general denial and pleas of assumed risk and contributory negligence. A verdict was returned for plaintiff but the court granted defendant a new trial on the ground that the proof established contributory negligence as a matter of law and plaintiff appealed.

Defendant manufactured window sashes and frames in its shop, using machinery operated by electricity to cut and prepare the material. Among the machines was the one in controversy which is called a relisher and was used to cut tenons upon and to bore holes in pieces of sash timber. It stood near the west wall of the room, was about three and one-half feet high, and the power was communicated to it by belting which could be shifted from a loose to a tight pulley and *vice versa*, to start or stop the machine, as rquired. The belt could be shifted from one wheel to the other by moving a perpendicular hand lever which was at the north or back of the machine, near its west end. Owing to the defective condition of the belting and shifting device, plaintiff says that to keep the belt on the tight pulley where it had to be for the machine to operate, it was necessary to push the end of the lever towards the wall as far as it would go and to hold it in that position by a cord looped over the lever and attached at the other end to the wall. When the operator desired to stop the machine, he slipped the loop off of the lever and pulled it eastward, thereby shifting the belt to the idle wheel and to do this, he had to be at the north side of the machine. The cutting of tenons or relishing was done by the circular saw which was attached to the west end of a horizontal shaft at the top of the machine. At the opposite end of this shaft was a mandril, or socket, for holding the bit in boring holes. Belting connected this shaft

with the lower shaft to which the tight pulley was attached and it is claimed by plaintiff that this belting was in a defective condition. Whether tenons were being cut or holes bored, both saw and mandril revolved with the top shaft to which they were attached. In cutting tenons the operator stood at the south or front side of the machine and placed the piece of timber to be cut on a table in front of the saw and then moved it against the saw. This table was twenty-four inches long and six or seven inches wide, and was so constructed that the timber could be securely held in a desired position and applied to the saw so that a tenon of accurate size would be cut. The saw was unguarded at its front arc of ninety degrees, extending from the top to the plane of the serving table. The evidence of plaintiff tends to show that it was praticable to enclose the whole of the upper and exposed half of the saw with what is called a full hood, which leaves an open space in front but little larger than the size of the largest sash timber to be inserted, or, to speak in geometric terms, an open arc of not more than thirty degrees. Defendant claims that thus to have enclosed the saw would have interfered with its practical use, since the operator could not have observed and regulated the cutting process, but this is answered with the statement that it was not necessary for the operator to observe the cutting, since adjustments of the timber were made on the serving table which unalterably fixed the manner and extent of the cutting.

There was a guard over the rear upper arc of ninety degrees of the saw's periphery, and this guard consisted of a narrow, flat strip of sheet iron, curved to conform to the curve of the saw. It afforded some protection to the operator while working at the back of the machine but none when he was working in front. In cutting tenons it was not necessary for him to place his hands near the saw since, as stated, the ad-

justments were made on the serving table. In boring holes the operator stood at the east end of the machine at a table in front of the bit which was inserted in the socket, or mandril, on a horizontal line and was designed to be securely held in the socket by the tightening of a lag screw. It was necessary that the bit be firm and tight in the socket in order that the holes might be bored with accuracy and to prevent the bit from being violently thrown out of place by the force of its rapid revolutions and thereby converted into a dangerous missile.

In filling a rush order defendant directed plaintiff to do some boring and on finding that the bit required would not fit well in the mandril, being too small and not the proper shape, plaintiff was directed to make it fit the best he could and obeyed the order by cutting off a piece from the butt end of the bit and wrapping that end with wire. Then he inserted it in the socket and tightened the holding screw but in the subsequent operation of boring, the screw had a tendency to loosen its hold and cause the bit to become unsteady and insecure. Plaintiff used a long screwdriver for tightening the screw and, after using it, laid it on the table in front of the saw, instead of on the table in front of the bit. Just before his injury he moved around to the back of the machine, which was in motion, intending to stop it and readjust the bit which had become so loose that he feared it might fly out of the socket. He loosely held the bit between the fingers of his left hand to steady it, and then reached over the revolving saw with his right hand to pick up the screwdriver. In some way his sleeve was caught by the teeth of the saw in front of the guard and his hand was pulled down and mutilated by the saw.

Plaintiff was at a place at the back of the machine from which by reaching far over with his right hand he could have slipped the loop from the end of the lever and pulled the lever eastward, thereby stopping

the machine, but he states that this would have compelled him to divert his attention from the bit and that his purpose in reaching first for the screwdriver was to enable him to keep his attention centered upon the bit which he deemed to be in a seriously menacing condition, and that he could do this only by using the screwdriver as a stick with which to slip the loop off the lever and push the lever back to throw the belt off the idle wheel and stop the machine, without releasing his hold or withdrawing his attention from the bit.

Without reciting further details pertaining to the evidentiary controversies, we conclude, from a careful reading of the record, that there is substantial evidence tending to support the contention of plaintiff that defendant negligently allowed the machine and its appliances to become defective in the particulars noted and that defendant had failed to guard the saw in sufficient compliance with the mandate of section 7828, Revised Statutes 1909, that all "belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties shall be safely and securely guarded where possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

This statute is highly remedial and has for its primary object the imposition of a duty upon the class of employers designated which, if properly performed, will protect employees engaged in such hazardous callings from avoidable and, therefore, unnecessary risks of injury. As is well said by the Supreme Court in Simpson v. Iron Works, 249 Mo. 376, "the responsibility of the employer created by the statute is to the State as well as to the employee and relates to every requirement contained in any provision of

any valid section of the Factory Act, and the failure of the employer to obey any such requirement is *per se* negligence and subjects him to liability for any injury caused thereby, provided the injured employee be free from negligence that directly contributed to his injury." [See also Lore v. Manufacturing Co., 160 Mo. 608; Millsap v. Beggs, 122 Mo. App. 1.]

It was the positive duty of defendant to provide a safe and secure guard for the saw, if that were possible without impairing the utility of the machine, and on the hypothesis which we find is supported by reasonable evidence, that the top of the saw could have been enclosed in a manner which would have made it impossible for plaintiff to have received the injury and would not have impaired the utility of the machine, we think a negligent breach of the statutory duty of defendant is disclosed and that such breach should be regarded as the proximate cause of the injury.

The view that defendant was not bound to anticipate that the operator might reach over the saw from the rear side of the table proceeds from a too narrow conception of the scope and purposes of the duty the statute imposed upon defendant. The nature of the tasks the machine was designed to accomplish its situation and the location of its various parts and appliances, show that the operator was expected and, indeed, was required to work in various places around it, and it is apparent that a reasonable person in the situation of defendant would have known that to leave any part of a swiftly revolving saw unnecessarily exposed would increase the hazard of working at and around the machine. The very fact that the back of the saw was guarded demonstrates that it was contemplated that the operator would be required, at times, to be on that side of the machine in dangerous proximity to the saw. The negligent breach of the statute is so clearly shown in the evidence of plaintiff

that we deem further discussion of that subject superfluous.

The serious question in the case is whether or not plaintiff was guilty in law of contributory negligence, first, in placing the screwdriver where he would have to reach over the saw to get it, and, second, in not stopping the machine before reaching for the screwdriver.

While the courts of this State have repeatedly held that contributory negligence is a defense to an action based upon a negligent breach by the emoployer of the guarding statute, the idea has been forcing itself upon the judicial conscience that the application of the rule of contributory negligence in its full force to such cases would tend to defeat the principal object of the statute and thereby thwart the clearly expressed and highly beneficent legislative intention to prescribe a course of conduct on the part of industrial employers which would decrease the dangers and hazards of their operations and minimize the slaughter and mutilation of their employees which attended conditions and practices tolerated by the rules of the common law. The legislature recognized the fact that workmen of ordinary care and prudence, at times, will be negligent and not properly attentive to their own safety. Man is prone to err and every man, however careful and cautious he may be by instinct or training will be negligent at some time. The higher duty laid by the statute upon employers was not needed for the protection of workmen exercising reasonable care for their own safety but for those who, becoming engrossed in their work, or for some other reason momentarily inattentive, would fall into the trap of unguarded death-dealing forces and suffer death or mutilation. If a proper performance of the statutory duty would protect the merely negligent workman, but the duty is left unperformed and the workman is injured, the absolution of the negligent employer from

liability on the ground of contributory negligence would be nothing short of a judicial declaration that the statute imposes no legal, i. e., enforceable duty, but merely expresses a legislative opinion upon a subject of social ethics. If the statute is not needed for the protection of the careful and will not be enforced for the benefit of the negligent it is wholly vain and useless.

In Millsap v. Beggs, 122 Mo. App. 1, this court, speaking through ELLISON, J., said: "He (the servant) could be guilty of such negligence in some circumstances, as would deprive him of a right of action. But we do hold that in all cases the statute must be allowed to count for something, and to that end it should enter into consideration in determining whether there was culpability on the servant's part. If the servant's fault is to be determined by the usual rules applicable where there is no statute, then the enactment of the statute was well-nigh useless."

In Huss v. Bakery Co., 219 Mo. 44, the plaintiff slipped on a slippery floor which he had negligently failed to clean, fell into the unguarded machine and was injured. On the theory that the negligent act of the plaintiff in failing to clean the floor concurred with the negligence of defendant in failing properly to guard the machine, the majority of the court *in banc* held that such contributory negligence would defeat a recovery. Speaking of the statute Judge WOODSON said in his able and unanswerable dissenting opinion:

"So, in brief, the rationale of the statute is this: that where it is possible to do so, the master must safely and securely guard the belting, shafting, gearing and drums in his institution; but when that is impossible, then he must give the required notice. This increases the degree of care required of the master regarding those matters from reasonable care to an absolute duty to safely and securely guard such

gearing, etc., where it is possible to do so without materially interfering with the working efficiency of the machinery of the institution; but if that is impossible, then he must post the required notice; and if he fails in the performance of those duties, then the burden rests upon him to show that the servant was guilty of such contributory negligence that he would have been injured in consequence thereof, even though the gearing, etc., had been so guarded, or that the notice had been properly posted.''

The writer is of opinion that this is the only view of the subject of contributory negligence in its relation to actions founded on the guarding statute which will harmonize with the clearly expressed legislative intent to impose an absolute duty upon the employer. Contributory negligence should not be allowed to defeat a recovery by the injured servant in instances where ·a proper performance of the master's duty would have prevented the injury. To hold otherwise would be to leave the respective rights and duties of the parties as they would be were there no statute.''

In Simpson v. Iron Works Co., 249 Mo. 376, the Supreme Court approved the doctrine of the dissenting opinion in the Huss case in the following language: ''We think, therefore, that the lawmakers in conditioning the duty to guard upon the phrase above quoted meant thereby that it should attach when the 'belting,' etc., should be so placed in a factory that its normal operation would injure any employee who should approach near enough to be caught by its force or subjected to its activity. Such accidents are likely to happen to employees who are engrossed in work near such machines unless they are protected from the workings of the machinery by safe and secure guards. This thought is expressed with clearness, force and completeness by Woodson, J., in the dissenting opinion of Huss v. Bakery Co., 210 Mo. l. c. 67 and 68, to-wit: 'The Legislature knew that the human mind

and conduct were such that a servant when in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not 'safely and securely guarded' he would in consequence thereof receive injuries of a serious character.''

In Brashears v. Iron Works Co., 171 Mo. App. l. c. 514, STURGIS J., in a concurring opinion properly observed: ''While it is held in Huss v. Bakery Co., 210 Mo. 44, 54, 108 S. W. 63; Dressie v. Railroad, supra; Millsap v. Beggs, 122 Mo. App. 1, 7 and 11, 97 S. W. 956, that plaintiff may be guilty of such contributory negligence as bars a recovery even in cases where by statute the machinery should be, but is not guarded, yet I do not understand such cases to hold that plaintiff's conduct as bearing on contributory negligence is to be measured by the same standard of care or, more accurately, that such standard rests on the same basis in cases covered by the statute as it would be if such statute did not exist.''

If it may be said that the Supreme Court in the Simpson case did not go the length of approving the doctrine that contributory negligence to be a defense in such cases must be such that the injury would have ocurred if the machine had been guarded or the notice posted, the court does say in that decision, as is aptly observed by the Supreme Court of Kansas in Baillod v. Grain Co., 145 Pac. Rep. l. c. 898 where the Missouri statute was before the court for interpretation, that the employee's negligence, in order to afford a defense is not considered in the same light or placed upon the same basis as it was before—''the statute must be allowed to count for something.''

It would seem that the humane and reasonable interpretation of the statute in its relation to the subject of contributory negligence is not whether the employee was negligent within the purview of the law as understood before the statute was enacted, but whether he was performing his ordinary duties within the meaning of the statute. If he was, the liability of the employer arising from his failure to guard the machine, if it were practicable to guard it, is just as absolute as his duty and should not be defeated by negligence of the employee which concurred in the production of the injury. This is the view of the writer who heartily indorses Judge WOODSON's doctrine that contributory negligence, to be a defense, must be such that the injury would have occurred if the employer had done his duty which, in its last analysis, is but another way of saying that contributory negligence is no defense to an action for a breach of the statute.

But it is not necessary to a proper decision of the case in hand for us to go to the length of the writer's opinion on this subject. We may remain in the dim and vague zone of the doctrine that contributory negligence is a defense but that the statute must be allowed to count for something, and yet must find that the court did not err in submitting the question of contributory negligence to the jury as an issue of fact.

Recurring to the act of the plaintiff in placing the screwdriver on the table in front of the saw, instead of on the table in front of the bit, we are not prepared to say that his statement that the latter table was affected more than the other by the vibrations of the machine and, therefore, was more likely to permit the tool to fall to the floor, is unreasonable and afforded no excuse for placing the tool where he would have to reach over the saw to get it. But if we

188MA36

should say that he chose the least safe of two equally available places, it would still be a question of fact for the jury to determine whether or not his act under all the circumstances of the situation was not excusable on the ground that it belonged to the class of acts to be expected from one working at dangerous machinery with his mind concentrated upon his work and, therefore, prone to make a mistake in the doing of an incidental act. It would seem that if the statute is to "count for something" the act in question belonged to the realm of its humane activity. And, further, we think that if negligent the act was a remote, not a proximate cause of the injury. After the tool was laid on the table a necessity arose for retaking it for use in meeting a dangerous emergency. What difference did it make at that time whether the tool had been negligently or properly placed on that table? It was there, and plaintiff was compelled to take it from where it was lying, regardless of how it happened to be placed there. He was in a situation of peril from the revolving, unstable bit, and we think the peril could and would have been safely averted if the saw had been properly guarded. The jury were entitled to infer that the negligent breach of the statute by defendant was the only proximate cause of the injury, unless we should find that plaintiff was guilty in law of contributory negligence in not stopping the machine before reaching for the screwdriver.

Plaintiff says that it would have been dangerous, in his situation, for him to have attempted to reach over to the lever with his right hand, slip the loop off, and pull the lever to shift the belt to the loose wheel.

The machine was before the jury and was before us at the argument of the case on appeal. From our inspection of it and from our analysis of all the evi-

dence, we incline to the opinion that whether or not it was practicable and reasonably safe for plaintiff to have attempted to stop the machine without the aid of the screwdriver was a question of fact for the jury to determine. But there is another and, perhaps, stronger reason for holding that plaintiff should not be pronounced guilty in law of negligence on this score. The law forgives and overlooks much in the conduct of one who labors under the stress of imminent danger to avoid injury to himself. There is often a vast difference between the promptings of judgment and those of the instinct of self-preservation. If the bit were violently expelled from the socket the directions of its initial flight and of its reboundings could not be foreseen and plaintiff has made it clear that he was acting under a reasonable fear for his own safety. It may be added to these considerations that the guard at the back of the saw which, as stated, extended over to a point in line with its perpendicular axis, held out a false assurance of safety. It appeared that if plaintiff reached over the top of the guard his hand would be in no danger of being downward to the exposed periphery of the saw, but there was a strong suction of air caused by the rapid revolutions that drew his sleeve into the teeth of the saw. Thus, instead of being a shield, the guard was a snare. To hold plaintiff guilty in law under such circumstances would not be permissible if the rule of contributory negligence were not modified by the statute, and certainly plaintiff should not be condemned under the view that the statute means something.

The court did not err in overruling the demurrer to the evidence but did err in granting a new trial on the ground stated in the order. It is argued in the brief of defendant that a new trial should have been granted on other grounds, but we find the cause was tried and submitted to the jury without prejudicial error.

The judgment is reversed and the cause remanded with directions to enter judgment on the verdict. All concur.