# THE STATE ex rel. CHARLES O. MANKER v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

### In Banc, April 30, 1921.

1. **CERTIORARI TO COURT OF APPEALS: Application for: Sufficiency of.** An application for a writ of *certiorari* to review an opinion of a Court of Appeals on the ground of conflict with a controlling decision of the Supreme Court does not comply with Rule 34 of the Supreme Court, when the application itself does not "set out the issue presented to the Court of Appeals or show wherein and in what manner the alleged conflicting ruling arose," but merely states that the decision of the Court of Appeals is in conflict with the last reported decisions of the Supreme Court on the

point in issue and refers to the opinion of the Court of Appeals and suggestions in support of the application filed with the application.

2. ———: ———: ———: **Waiver.** The respondents having waived the insufficiency of the application for the writ, and the writ having been granted and return made, the Supreme Court will consider the suggestions made by relator.

3. ———: **Conflict of Opinions: Guarding Dangerous Machinery: Statute.** The Supreme Court has never construed Section 7828, Revised Statutes 1909 (Section 6786, Revised Statutes 1919), to mean that if the appliances provided to safely and securely guard dangerous machinery should, without any negligence of the master, suddenly get out of repair or fail to function then, in such case, there was a failure to comply with the statute.

4. ———: ———: ———: ———. The Court of Appeals reversed a judgment for relator against his master for personal injuries sustained while working at a planing machine, which relator's petition alleged was operated without having any safe and secure covering, guard or protection to prevent workmen coming in contact with the rotating knives of said machine and which it was alleged the master carelessly and negligently failed to safely guard. The facts showed that a guard was provided which could be adjusted by a thumbscrew to any required height. For some unexplained reason this guard suddenly and unexpectedly failed to work when relator attempted to lower it and so he tightened the thumb-screw to hold it in place and proceeded to use the machine with it in that position. It was relator's duty to adjust the guard. While using the machine to plane a heavy board with the guard as stated his foot slipped on a loose piece of gas-pipe lying on the floor and covered with shavings and his arm and hand were thrown against the knives and he was injured. *Held*, the decision of the Court of Appeals was not in conflict with any decision of the Supreme Court.

*Certiorari.*

WRIT QUASHED.

*C. W. Prince, E. A. Harris, E. C. Hamilton,* and *James N. Beery* for relator.

The decision of the Kansas City Court of Appeals is in conflict with the decisions of the Supreme Court of Missouri and decisions of the Court of Appeal. Hayes

v. Sheffield Ice Co., 221 S. W. 707; Wagner v. Const. Co., 220 S. W. 898; Hughes v. Mfg. Co., 188 Mo. App. 549; Cole v. Lead Co., 240 Mo. 408; Lore v. Mfg. Co., 160 Mo. 608.

*John H. Lucas* for respondent.

(1) None of these cases cited by the relator in any manner conflict with the opinion in the instant case. (2) The opinion of the Court of Appeals is fully jus tified in the principle of law in Huss v. Bakery Com pany, 210 Mo. 51-52; 18 R. C. L. 544; Strode v. Box Co., 250 Mo. 728; Cordage Co. v. Miller, 136 Fed. 495; 26 Cyc. 1255; Benner v. Lumber & Mfg. Co., 56 Wash. 679; Cole Mfg. Co. v. Racine, 43 Ind. App. 695; Honor v. Al brighton, 93 Pa. 475.

HIGBEE, J.—*Certiorari* to the Kansas City Court of Appeals. The application for our writ of *certiorari* in this cause recites, *inter alia,* that the respondents, judges of the Kansas City Court of Appeals, have ren dered judgment in a certain cause pending in said Court on Appeal from the Circuit Court of Jackson County, in which relator was plaintiff and "that said above tribunal in rendering its decision in the cause aforesaid has disregarded and is disregarding the last reported decisions of the Supreme Court touching the points in issue, which are in direct con flict with the opinion in the case, as will more fully appear in the certified copy of the opinion of said court heretofore rendered, together with the suggestions herewith filed in support of this application." Wherefore your petitioner prays, etc.

*Application for Certiorari: Requisites of.*

The foregoing excerpt is all that is said in the ap plication touching the decision of the Court of Appeals. It does not state that the judgment of the Court of Ap peals was adverse to relator. It does not "set out the issue presented to the Court of Appeals or show wherein and in what manner the alleged conflicting ruling arose."

It does not refer to any decision of this court with which the ruling of the Court of Appeals is said to conflict. The application is followed by a statement and suggestions in support of the application, setting forth the allegations of the petition, the statute on which the action is based, and excerpts from the opinion of the Court of Appeals with reference to certain decisions of this court with which it is said the decision is in conflict.

The application does not conform to the requirements of Rule 34 of this court but since the respondent waived the insufficiency of the application and the writ was granted, we will consider the suggestions made by the relator.

Relator sued the Standard Oil Company of Indiana for damages for personal injuries sustained December 18, 1916, as alleged in his petition, while working at its planer, a machine having knives on a cylinder rotating at a high rate of speed, without having any safe and secure covering, guard or protection to prevent workmen coming in contact with said rotating knives, and carelessly and negligently failed to safely guard said planer.

*Statement of Case.*

On the trial of the cause, plaintiff recovered judgment from which the defendant appealed. The judgment was reversed by the Court of Appeals.

The action is based on Section 7828, Revised Statutes 1909 (Sec. 6786, R. S. 1919). It appears from the opinion, Manker v. Standard Oil Co., 221 S. W. 139, that defendant provided a guard which could be raised or lowered and kept at any desired height by means of a thumbscrew. When this guard was let down, it afforded ample protection to the workman at the planer.

It further appears from the opinion that the plaintiff undertook to use the planer and found he could not lower the guard; that he was familiar with the use of the machine and knew the danger of operating it without having the guard in proper position; that he did not notify any one of his inability to lower the guard, but, thinking that he could operate the planer, tightened the

thumbscrew to prevent the guard falling, placed a heavy plank on the planer and turned on the power; that while so at work, he stepped on a piece of gas pipe concealed in some shavings, slipped and fell with his hand and arm on the revolving cylinder and sustained the injuries complained of.    The opinion recites:

"He (plaintiff) says that when he took the board to the planer he found the guard was up 'too high.'  .  .  . Plaintiff says he tried to get the guard down but it would not move, whereupon, to prevent it coming down on account of the jar of the machinery during the prosecution of the work, he tightened the thumbscrew so it could not do so.    He went ahead with the planing of the board, knowing and being fully aware, so he himself says, of the danger of using the machine with the guard thus raised above the table.    He says also that the board could easily have been run through the planer with the guard down close to the table top and that it was unnecessary to have it raised any distance therefrom.    He says also that he did not notify the superintendent or foreman or anyone that the guard would not come down; and there was no evidence that the guard had been so that it would not come down for any length of time prior to this occasion when he tried to lower it.

In the course of planing the edge of the board, plaintiff says he stepped on a piece of gas pipe which he did not know was in the shavings on the floor, and this gas pipe rolling under his foot caused him to lose his balance and fall forward thrusting his left hand and arm down against the revolving knives whereby he was injured.

Thus it will be observed that in his pleading he has charged *a failure* to guard as required by the statute at that time in force, while in his evidence he shows that there *was* a guard; that the guard was *adjustable* so made as to permit timbers of different sizes to be planed on said machine; that the duty of adjusting the guard in accordance with the particular timber to be planed was upon the one desiring to use the machine; that it was unnecessary to have the guard raised at all in order to plane

this particular board; that had the guard been down close to the surface of the table he would not have been injured; that when he found the guard was up and would not come down he did not inform the defendant or anyone in authority so that the guard could be adjusted; but without saying anything to anyone, except his associate who plaintiff says tried with him to lower the guard, and knowing full well the danger of so doing, plaintiff proceeded to use the machine with the guard as it was. There was no claim that the guard had been in this condition for *any* length of time prior to plaintiff's attempt to lower it. . . . "

"The cause of action pleaded was a failure to safely and securely guard *when possible,* a duty imposed by statute. The evidence disclosed that a safe and secure guard was provided; that to do the work required of the machine the guard had to be adjustable, that is, movable up and down according to the work to be done, and this adjustment was to be done by the operator before starting the machine; that there was a secure guard but for some mysterious reason it suddenly and momentarily refused to be adjusted; whereupon the operator, the only one who knew of this mysterious and sudden condition, chose to operate the machine with the guard up and without informing his master of the situation or giving him any opportunity to remedy the matter. The statute did not intend that the master should stand over and watch the machine and thus 'maintain' the guard in the sense required by the circumstances of this case. It is true, that in Lore v. American Mfg. Co., 160 Mo. 608, the master was held liable under the statute where a guard was provided but which was *out of repair.* But in that case the defective state of the guard made it no guard at all, and this defective condition had existed from several months to two years before the injury, and the Supreme Court on page 675, say, 'We think the evidence was sufficient to show *negligence* in not repairing this guard.' " (Italics ours.)

Relator contends that as the guard was out of order and he was unable to lower it at the time of the injury, there was a failure to comply with the statute requiring dangerous machinery to be safely and securely guarded when possible; that the statute does not provide for any interval of time for the master to learn of and remedy the defective condition of the guard; it prohibits the use of such machinery at all without being securely guarded, and that the opinion of the court of appeals in reversing the judgment is in conflict with Hayes v. Sheffield Ice Co., 282 Mo. 446; Wagner v. Constr. Co., 220 S. W. 890; Hughes v. Mfg. Co., 188 Mo. App. 549; Cole v. Lead Co., 240 Mo. 397, 144 S. W. 855; and Lore v. Mfg. Co., 160 Mo. 608, 61 S. W. 678.

*Dangerous Machinery: Statute Construed.*

In the Lore case the guard had been out of repair for from several months to two years before the injury. It was there said: "We think the evidence was sufficient to show negligence in not repairing this guard." That case is opposed to relator's contention. The recovery was based on a negligent failure to repair the defective guard. It is not an authority for the proposition that the master is liable in case he has provided a safe and secure guard which, for some unexplained reason, fails to function. In that case it was held that the master was liable for negligent failure to make repairs.

In the Wagner case it was held that under Section 7828, Revised Statutes 1909, prohibiting the use of unguarded, dangerous machinery, an employer is not given a reasonable time within which to guard the machinery but is absolutely forbidden to use it until it is guarded.

In the Hayes case the plaintiff was employed to dismantle an old ice-house. He was ordered to go on the roof to tear off sheeting and was assured that the place was safe, and while so engaged the wall fell and plaintiff was injured. Obviously, this case has no relevancy to the questions under consideration.

We have carefully examined the other cases cited by relator and are unable to find any conflict between them and the opinion of the court of appeals.

Briefly stated, relator's contention is that this court has construed the statute to mean that the appliances provided to safely and securely guard dangerous machinery must be maintained and that if, without any negligence on the part of the master, the appliance so provided should suddenly get out of repair or fail to function, then, in such case, there was a failure to comply with the statute. Our attention has not been called to any case in which we have so ruled. The writ was improvidently granted and should be quashed. It is so ordered. All concur, except *Woodson, J.,* absent.