JAMES M. HAMMACK, Respondent, v. ARCHIBALD M. HILL and WILLIAM L. BEHAN, Partners, Doing Business Under the Firm Name of HILL-BEHAN LUMBER COMPANY, Appellants.

St. Louis Court of Appeals. Opinion Filed April 3, 1923.

1. **APPELLATE PRACTICE: Demurrer to Plaintiff's Evidence: Rule of Review.** In dealing with the question as to whether or not a demurrer should have been sustained, the appellate court must treat plaintiff's evidence as true and give him the benefit of all reasonable inferences which may be drawn therefrom.

2. **MASTER AND SERVANT: Negligence: Failure to Guard Dangerous Machinery: Servant Injured: Contributory Negligence: Available as a Defense.** Notwithstanding the violation of the duty expressly inposed upon an owner of machinery dangerous to employees required to be guarded by the guarding statute, is negligence *per se,* which prima facie imposes liability for damages resulting there-

13—211 M. A.

from, in an action for damages by an injured employee contributory negligence is available as a defense.

3. ——: ——: ——: ——: Evidence: Servant Operating Ripsaw Not Guilty of Contributory Negligence as a Matter of Law. In an action for damages for personal injuries alleged to have been caused by the negligence of defendant in failing to safely and securely guard a circular ripsaw, *held* that the plaintiff in performing the work and removing materials which would accumulate around the saw in the usual and ordinary way in which it was done, as shown by the evidence, was not guilty of contributory negligence as a matter of law.

4. NEGLIGENCE: Contributory Negligence: If Reasonable Minds Differ Question for the Jury: Rule. Whenever the question arises from a state of facts from which reasonable men may arrive at different conclusions, then the question of contributory negligence is one for the jury.

Appeal from the Circuit Court of St. Louis County.— Hon. *John W. McElhinney*, Judge.

AFFIRMED.

*Taylor, Chasnoff & Willson* and *Hugo Monnig* for appellants.

The respondent was guilty of contributory negligence as a matter of law and is not entitled to recover from appellants; the judgment should be reversed. Huss. v. Heydt Bakery Company, 210 Mo. 44; Stegmann v. Gerber, 146 Mo. App. 104; Doerr v. St. Louis Brewing Ass'n, 176 Mo. 547; Williams v. St. Joseph Company, 214 S. W. 385; Smith v. Forrester-Nace Box Company, 193 Mo. 715; Francis v. Railroad Company, 110 Mo. 387; Kilmer v. Connecticut Zinc Corporation, 227 S. W. 861; Biddlecom v. Nelson Grain Company, 178 S. W. 750; Egan v. Trenton Gas & Electric Company, 233 S. W. 239.

*Claude M. Crooks* and *Charles E. Morrow* for respondent.

The court did not err in refusing the defendant's instruction in the nature of a demurrer to the evidence. The plaintiff was not guilty of contributory negligence as a matter of law. Wagner v. Gilsonite Const. Co., 220 S. W. 890; Tatum v. Laundry Co., 201 Mo. App. 97; Hughes v. Manufacturng Co., 168 Mo. App. 549; Brashers v. Iron Works, 171 Mo. App. 507; Simpson v. Iron Works Co., 249 Mo. 376; Yates v. House Wrecking Co., 195 S. W. 549.

NIPPER, C.—In this action plaintiff seeks to recover damages for personal injuries sustained by him while in the employ of defendants at their planing mill and factory at 6600 Page Avenue in St. Louis County. The negligence alleged is the failure of defendants to safely and securely guard a circular ripsaw while the same was so placed and being operated as to be dangerous to persons employed therein and thereabout while engaged in their ordinary duties, and that the same could have been safely and securely guarded.

The answer was a general denial, coupled with a plea of contributory negligence.

The reply was a general denial.

At the time plaintiff received his injuries he was operating a circular ripsaw, and was an experienced operator, having been employed and engaged in this character of labor for many years. In the performance of his duties as an employee of the defendant he was requred to operate the ripsaw in question, which was fastened to an iron table about four feet wide and four or five feet long. The saw was placed in a slot in the table, and extended above the table a distance estimated by witnesses as being from three inches to four and one-half inches. The diameter of the saw is estimated at from eight to fourteen inches. It was not guarded. It was plaintiff's duty to keep the table clean to avoid the accumulation of materials that would be dropped around the saw while it was in use. At the time plaintiff was injured he was engaged in "pointing" stakes. In size these stakes would be called, in lumber parlance,

2 x 2 and four feet long, that is, each of the four sides of the stake was about two inches wide. The end of this stake would be placed against the saw by plaintiff, and held in such a position that a rectangular piece about three or four inches long would be sawed from each of the four sides thereof, making the stakes pointed so that they may be used, as we understand it, by surveyors. When these small pieces were sawed off they would fall on the table near the saw. When this happened plaintiff would usually reach around the saw and take the pieces of sawed off material out of the way with his hands. There was evidence that the saw could have been guarded without interfering with its operation. Plaintiff had started to work about seven o'clock on the morning he was injured. He oiled the machine and started it in operation, which was done by pressing an electric button or turning on a switch in the building somewhere near where the saw was located. When the saw was in operation and plaintiff was in the usual and ordinary course of his employment he would stand at the end of the table facing this circular saw which revolved toward him. He had only pointed two stakes when he noticed a board about two inches wide, one-half inch thick, and eighteen inches long, lying on the table near this saw. Seeing this board and observing that it was close to the saw, and being desirous of removing it before it became caught by the teeth of the saw and thrown toward him, he reached over the saw from his standing position, and, while attempting to remove the board, his hand was caught and he received injures. It is unnecessary to set out in detail the nature and character of the injuries he received, as no point is made here that he was not injured, or that the verdict is excessive. This saw was operated by electric power. The evidence also discloses that plaintiff could have stopped the saw and removed the board, or could have walked around the table, or might have removed the board with the stick he was holding in his hand, and not have been injured.

The sole question in this case presented for our consideration being the question of whether or not plaintiff should be declared guilty of contributory negligence as a matter of law, we think it best to set out some of the evidence of plaintiff on cross-examination, as it appears from the abstract of the record, as this not only gives the exact language of the witness, but indicates, we think, the meaning and construction to be placed upon his testimony as well as his conduct at the time he was injured:

"Q. After the saw was started up and you had sawed two pieces, you tried to take the board off? A. Yes, sir.

"Q. At that time you could have turned off the power of the saw by turning a button, and had the saw stopped, while you were taking the board off? A. Well, if I had walked 'way back there and hadn't gone to work, every time that there was a piece of board there, and taken it off, what kind of work would I have done?

"Q. Just answer the question yes or no. A. If I had run back and stopped it, I suppose I wouldn't hurt anybody.

"Q. If you had stopped the saw you could have taken the board off without getting hurt? A. Certainly, if I walked back there.

"I might have knocked the board off the table—pushed it off the table with one of those sticks that I was working with. I could have done that and my hand would not have gotten within five feet of the saw; that is true enough, but we don't all think of those things; we ain't got a mind a mile long. The saw revolves toward you as you stand there at the south end working, it turns around toward you. The table shakes some; there is some vibration to the table. The saw is liable to pick up a board lying on the table within an eighth of an inch of the north end of the saw if the shaking of the table makes the board joggle over to where the saw touches it, it would land right in my breast. It would pick the board up and shoot it south so that all the

time that the board was lying there so close to the saw it was a dangerous thing. A man who would work there with a board lying so close to the saw would be in danger. Of course, I couldn't tell when the saw would pick that board up, nor I couldn't tell at the time that I was in any danger of getting it. If it picked the board up just as you reached for it, it was liable to carry your hand into the saw—it doné it, too. I didn't think of that at the time; I was in a hurry to do my work. I had worked on a saw like that for ten or fifteen years. I knew that a board like that is liable to be caught on a saw and carried into a saw. If I could get the board off quick enough, it wouldn't have bothered the saw; I just grabbed for it and it took it just as I grabbed.

"Q. You knew that if it took it just as you grabbed it, it would carry your hand into it and hurt it? A. I didn't think about that; I didn't have the least idea, or I wouldn't have went near it, if I had the least idea."

The evidence on the part of the defendant tended to refute some of plaintiff's evidence, especially as to the method of removing the accumulated material which was left around the saw when the stakes were being pointed. However, in dealing with the question as to whether or not a demurrer should have been sustained, we must treat plaintiff's evidence as true, and give him the benefit of all reasonable inferences which may be drawn therefrom. There is no contention here that the circular saw which injured the plaintiff does not come within the purview of the guarding statute, which requires such machinery to be guarded, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, if it is possible to do so without materially interfering with its operation. The object and purpose of the Legislature in enacting this statute has been stated many times by our Supreme Court, and the strong and forceful language of WOODSON, J., in his dissenting opinion in Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S. W. 63, as to the object and purpose of the Legislature in enacting this

statute, has been quoted approvingly by our Supreme Court in many decisions since that, among which we may mention Cole v. Lead Co., 240 Mo. 397, 144 S. W. 855; Simpson v. Iron Works, 249 Mo. 376, 155 S. W. 810; and Wagner v. Gilsonite Construction Co., — Mo. —, 220 S. W. 890. The opinion in each of the three last-mentioned cases was concurred in by the writer of the majority opinion in Huss v. Heydt Bakery Co., supra. It was apparent to the Legislature enacting this statute that such a piece of machinery as the one in question was likely to injure employees while engaged in their ordinary duties in operating such machinery. It was so probable that accidents would happen that the Legislature passed an act requiring this character of machinery to be guarded, and the violation of this duty expressly imposed by statute upon an owner of machinery dangerous to employees is negligence *per se* which prima facie imposes liability for damages resulting therefrom. Notwithstanding this, it seems to be the settled rule in this State that contributory negligence is available as a defense. [Huss v. Heydt Bakery Co., supra; Higgins v. Medart Patent Pulley Co., — Mo. App. —, 240 S. W. 252, 1. c. 255.]

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law, because there were other ways by which he could have removed the board from its position on the table near this saw which would have been safe, and that instead of plaintiff choosing this way he chose the most hazardous method, and therefore should be denied a recovery. Plaintiff testified that he was performing his work in the usual way in which he had been performing it while working at this saw, and if his evidence is treated as true, then we must assume that he was performing this work and removing the materials which would accumulate around the saw in the usual and ordinary way in which it was done; and in doing this it does not appear that he was unsuccessful or was ever injured at any time before this. That portion of the record which we have copied above,

setting out plaintiff's testimony, does not indicate what questions were asked, but only the answers given in a narrative form. The character of a question and the manner in which it is asked may be responsible many times for the character of the answer and the manner in which the question is answered. The testimony above referred to we think clearly indicates that the plaintiff was seeking to tell the exact facts as they existed at the time he was injured, and to express in his frank but perhaps crude manner just what the conduct of an ordinarily prudent man would have been under the same or similar circumstances. He says he might have pushed the board off with one of the sticks he was sharpening, in which event his hand would not have been injured, "but we don't all think of those things;" that he could have turned off the power and stopped the saw and thereby have prevented the injury, "but what kind of work would I have done?" It also appears that he could have walked around the table on the other side of the saw, but this method, from his testimony, was not the usual and ordinary way in which he had been removing these boards. Should plaintiff be declared guilty of contributory negligence as a matter of law because he did not do these things? This statute was enacted to meet just this situation. There are few accidents that happen and few injuries suffered but what it might be said after the injury, and the injured party has had time to reflect, that there was a way by which the injury could have been averted if the care, caution, and reflection had been resorted to before the accident that we can think of after it is all over. But, to quote the expression of plaintiff, which we think is illustrative: "I didn't think about that; I didn't have the least idea or I wouldn't have went near it if I had the least idea." The mere fact that plaintiff might have avoided the injuries is not the true criterion by which his contributory negligence must be judged. The question is, whether or not reasonable minds may differ on the question as to whether or not plaintiff, under all the facts and circum-

stances in evidence in this case, exercised such care as a reasonably prudent person would have exercised under the same circumstances. If reasonable minds differ about that matter, then it becomes a question for the jury. The announcement of this principle of law, in most cases, is easier than its application. There is no inflexible formula to apply to all cases. Each must be ruled in view of the peculiar characteristics it exhibits. [Kenney v. Railroad Co., 105 Mo. 270, 15 S. W. 983; 16 S. W. 837.] Before we would be authorized to convict plaintiff of contributory negligence as a matter of law, the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from the evidence. Whenever the question arises from a state of facts from which reasonable men may arrive at different conclusions, then the question is one for the jury.

In Wagner v. Gilsonite Construction Co., — Mo. —, 220 S. W. 890, l. c. 897, it is said:

"If dangerous machinery had to stop every time an employee, in performing his duties, was working near it, there would have been no necessity for the statute in question."

Plaintiff was performing his duties, according to his evidence, in the usual way, and was injured. From the facts as above stated, we think it was a question for the jury to say whether or not plaintiff was guilty of contributory negligence. This disposes of the only question presented for our consideration on this appeal.

Finding no reversible error, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.